**IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT**
**IN AND FOR ORANGE COUNTY, FLORIDA**

```
KATHLEEN M. BONCZYK,           ) Case No. 2018-CA-010630-O
                               )
            Plaintiff,         )
                               )
v.                             )
                               )
JULIAN KEITH LEVENE,           )
MARTIN GLOVER,                 )
JOHN WARDLE,                   )
JEAN MARIE CARROLL,            )
RICHARD ENGLAND and            )
CADIZ MUSIC AND DIGITAL LTD,   )
                               )
            Defendants.        )
_____)
```

<u>**SECOND AMENDED COMPLAINT**</u>

Comes now Plaintiff, by and through her undersigned counsel, and sues Defendants as follows:

<u>**JURISDICTION, PARTIES, VENUE and FACTS COMMON TO ALL COUNTS**</u>

1.   This is an action for damages in excess of $15,000, exclusive of interest, attorneys' fees and costs, and for injunctions involving the Defendants JULIAN KEITH LEVENE ("LEVENE"), MARTIN GLOVER ("GLOVER"), JOHN WARDLE ("WARDLE"), JEAN MARIE CARROLL ("CARROLL"), RICHARD ENGLAND ("ENGLAND") and CADIZ MUSIC AND DIGITAL LTD ("CADIZ") to prevent Defendants from using, modifying, promoting, selling, exploiting, and/or engaging in infringing activities relative to Plaintiff's property, including property owned by copyright, and to prevent Defendants GLOVER, WARDLE, CARROLL, ENGLAND and CADIZ from interfering with

Plaintiff's rights and interests arising from her Contract with LEVENE and Plaintiff's ownership interests in the property described in Exhibit 1.

2.    All conditions precedent to the filing of this action, if any, have been performed, have occurred, or have been waived.

3.    Plaintiff KATHLEEN M. BONCZYK is a resident of Orange County, Florida.

4.    Defendant LEVENE is a resident of England.

5.    Plaintiff and Defendant LEVENE have a valid and enforceable Contract which is a subject of the instant litigation; attached as Exhibit 1.

6.    LEVENE submitted himself to the jurisdiction and venue of this Court through the Contract attached as Exhibit 1, at clause G. b).  The clear and unambiguous language set forth in  clause G. b). of Exhibit 1 provides that Exhibit 1 is to be interpreted in accordance with the laws of the State of Florida and in Florida.

7.    LEVENE was the party who recommended that he and Plaintiff memorialize into the Contract attached as Exhibit 1 their agreement that had been in existence since approximately September 2012.  See Exhibit 1 at clause A.6.

8.    As per LEVENE's and Plaintiff's expressed agreement reduced to writing in Exhibit 1 at clause G. b), only the state courts of the state of Florida and no other state court or federal

court or international court is empowered or has jurisdiction to construe and enforce the provisions of Exhibit 1.

9.   Defendant GLOVER is a resident of England.

10.   GLOVER is a musician also known as "Youth" of a band called Killing Joke and is a producer of other musicians' work.

11.   GLOVER has frequently worked in the United States including during the months of October and November 2019.

12.   Defendant WARDLE, also known as "Jah Wobble," is a resident of England. He is employed as a musician and has frequently worked in the United States, most recently in October 2018.

13.   LEVENE, WARDLE and GLOVER have known each other for many years, possibly dating back to the 1970s.

14.   Defendant CARROLL is a resident of England.

15.   Defendant ENGLAND is a resident of England and is director and owner of CADIZ, which is involved in the distribution of music, books, merchandise and other items relating to the music industry.

16.   At all pertinent times, ENGLAND was acting on behalf of himself individually and/or in his official capacity on behalf of CADIZ.

17.   Allegations in this pleading referencing ENGLAND are to be taken and understood to mean ENGLAND individually and/or in his official capacity on behalf of CADIZ.

18.   On information and belief CARROLL has an extremely close and continuing working relationship with Defendants ENGLAND and CADIZ, has frequently performed work on behalf of ENGLAND and CARDIZ including but not limited to designing ENGLAND and CADIZ's business website, and has provided services to ENGLAND and CADIZ for other artists and bands ENGLAND and CADIZ distribute, sell and promote products for. Additionally, ENGLAND and CADIZ market, sell and distribute products such as music produced by CARROLL and his band "The Members."

19.   CARROLL is, has, and continues to be centrally involved with ENGLAND and CADIZ in the marketing, exploitation, sale and promotion of "A Very British Coup," which is a subject of this litigation. CARROLL's activities include but are not limited to soliciting and encouraging the sale of "A Very British Coup" on CARROLL's personal social media accounts. Furthermore, CARROLL, in collaboration with ENGLAND and CADIZ, filmed, produced and distributed a promotional music video for "A Very British Coup." The video shoot occurred in approximately late September 2019 in and around ENGLAND and CADIZ's offices and after the filing of the Amended Complaint in this action naming ENGLAND, CADIZ, WARDLE, GLOVER and LEVENE as Defendants. In the finished music video production, the "A Very British Coup" music is heard playing and WARDLE, GLOVER and LEVENE are seen performing their instruments to the music.

20.  CARROLL on information and belief was involved in all aspects of the music video planning, development and post-production process together with ENGLAND and CADIZ. CARROLL distributed the completed "A Very British Coup" music video he created with ENGLAND and CADIZ and posted said music video on You Tube (https://www.youtube.com/watch?v=TWI61RSle1A) and possibly elsewhere, and a principal purpose in his doing so was to solicit and induce sales of the "A Very British Coup" music to the benefit of himself, GLOVER, WARDLE, LEVENE, ENGLAND, and CADIZ.

21.  On information and belief, CARROLL was aware of a dispute that arose involving Plaintiff regarding "A Very British Coup," and which resulted in the filing of an Amended Complaint in this action naming WARDLE, GLOVER, LEVENE, ENGLAND and CADIZ as Defendants. Nonetheless even after the filing of said Amended Complaint, CARROLL decided to continue to involve himself in the "A Very British Coup" project and does so to the present time.

22.  GLOVER, WARDLE, CARROLL, ENGLAND and CADIZ, are complete strangers to Plaintiff, have no first-hand knowledge whatsoever of Plaintiff's past business dealings and work with LEVENE, and played no role at all in the financing, planning, developing and/or creating of Plaintiff's work product and property with LEVENE including property and work product used in "A Very British Coup." Nevertheless, GLOVER, WARDLE, CARROLL, ENGLAND and CADIZ have used and continue to use, exploit, sell, and benefit from Plaintiff's

work product and property for their personal, financial, and professional gain, without Plaintiff's authorization, over her objections, and refuse to stop doing so when directed to by Plaintiff.

23.  As with CARROLL, ENGLAND and CADIZ have well-established business relationships with WARDLE and GLOVER, which relationships have over the years involved the sale and distribution of WARDLE's and GLOVER's past musical releases and merchandise such as WARDLE's autobiography and tee-shirts. ENGLAND has openly publicized his association with WARDLE and GLOVER on his CADIZ's website and elsewhere, a website created by CARROLL. ENGLAND and CADIZ have provided space within their offices to host special events for or on behalf of GLOVER. GLOVER has publicly praised ENGLAND for work ENGLAND has performed for GLOVER, such as hosting GLOVER's first solo art installation in approximately December 2016 through January 2017 at ENGLAND's and CADIZ's offices and in late March 2019 for what GLOVER has referred to as ENGLAND's "facilitating" a movie event which featured a film about GLOVER. This event occurred just three weeks before ENGLAND and CADIZ wrote their first of multiple emails to Plaintiff in Orange County, Florida, on behalf of GLOVER, WARDLE, and CARROLL concerning "A Very British Coup," which is a subject of this lawsuit, and which ENGLAND and CADIZ released and have distributed and sold on GLOVER, WARDLE and

CARROLL's behalf from July 2019 to date, and has solicited and accepted payments through PayPal and other funding sources.

24.  At all pertinent times, while in contact with Plaintiff directly and/or Plaintiff and her counsel and/or Plaintiff through her counsel from April 16, 2019 through September 2019, ENGLAND and/or CADIZ operated as an agent of GLOVER, WARDLE and CARROLL.

25.  In executing Exhibit 1, LEVENE confirmed that he understood that he had the right to seek independent counsel of his own choosing and acknowledged that he declined the opportunity to seek independent counsel of his own free will before signing Exhibit 1. See Exhibit 1 at clause A.7.

26.  GLOVER, WARDLE, CARROLL, ENGLAND and CADIZ submitted themselves to the jurisdiction and venue of this Court by virtue of their acceptance of an assignment of a portion of LEVENE's minority property interests in the property described in Exhibit 1. See Composite Exhibit 2.  By such acceptance, GLOVER, WARDLE, CARROLL, ENGLAND and CADIZ became bound by that part of Exhibit 1 that provides:

> G.  Miscellaneous.
>
> a) Binding Effect.  This Agreement shall be binding upon the successors and assigns of the parties.
>
> b) Jurisdiction/Applicable Law.

The Parties hereby submit to the jurisdiction of the courts of the state of Florida for the enforcement of this Agreement. This Agreement shall be enforced or construed according to the laws of the State of Florida.

27.  ENGLAND and/or CADIZ sent numerous email communications to Plaintiff directly, to Plaintiff and her counsel, and/or to Plaintiff through her counsel from April 16, 2019 through September 4, 2019. In those emails ENGLAND and/or CADIZ entered into a written agreement on behalf of GLOVER, WARDLE and CARROLL with Plaintiff via emails sent to and received in Orange County, Florida. ENGLAND and/or CADIZ's actions initiated email correspondence from Orange County, Florida, where Plaintiff and her counsel are both located.  This serves as further proof of ENGLAND, CADIZ, WARDLE, GLOVER, and CARROLL's submission to the jurisdiction and venue of this Court. See Composite Exhibit 2.

28.  The genesis of the property described in the Contract ("property") originated in Florida in approximately 2012 and was the result of an enormous amount of dedication, work, creative ideas and financial investments by Plaintiff from 2011 through 2016 and beyond.

29.   LEVENE, a musician, was physically in Florida when the property was initially conceived and thereafter developed during parts of June, July and August 2012, all of September 2012, parts of October 2012, all of November and December 2012 and parts of January and April 2013. Plaintiff and LEVENE worked on the property in Central Florida, including at times in Orange County, Florida, continuously for a two week period in approximately November through December 2012.

30.   Significant financing for the property emanated from Plaintiff in Florida. Due to LEVENE'S extreme financial problems, he was in no position to finance, develop and/or create the property without Plaintiff's financial investments, assistance and loans, and Plaintiff's procured sales revenues of the property itself, all of which LEVENE accepted.

31.   Many prototypes of the property consisting of such things as music, books, artwork, and merchandise, reside in Orange County, Florida.

32.   From 2012 through December 2015, Plaintiff and LEVENE created, devised, and developed prototypes for their physical art and created additional versions of the physical art through December 2015, some of which served as custom covers for CDs containing music owned by Plaintiff and LEVENE.

33.   Plaintiff and LEVENE developed and perfected a unique method of producing music and physical art arising from a

substantial investment of time, energy, finances and work, commencing in Florida in approximately June 2012, that resulted in substantial financial and career-enhancing benefits and rewards to LEVENE, from which, on information and belief, he continues to use and reap benefits up to the present time. Prior to the time when Plaintiff and LEVENE commenced working together, LEVENE's primary focus was on creating digital art, not physical art, and LEVENE had not produced physical art for sale for many years before he began working with Plaintiff and perfecting the process devised and used by the two in their work together.

34.  These unique processes of creating physical art were used in works of art which on information and belief were sold to GLOVER and a friend of GLOVER named Jimmy Cauty at a 2016 event LEVENE participated in called the Art/Car/Boot Fair, which was facilitated and/or made possible by a third party named Paul Carter Robinson ("Robinson"), who Plaintiff originally introduced LEVENE to. On information and belief, GLOVER and Cauty conferred with Robinson, a long term fan of LEVENE, at the 2016 Art/Car/Boot Fair.

35.  In approximately 2014, Plaintiff learned of Robinson and his company called the Artlyst, which was and is involved in the arts, and brought both Robinson and the Artlyst to LEVENE's attention, initiated and facilitated communications between them, and helped arrange for an in-person meeting between LEVENE and Robinson in the summer of 2015. Additionally, Robinson, at

Plaintiff's and LEVENE's invitation, attended an event arranged for by Plaintiff with Jill Adam, curator of the Louder than Words festival, another contact developed by Plaintiff who was introduced to LEVENE by Plaintiff, at the Central St. Martin's School of Design in November 2015. Robinson's invitation to this event, which included a display of Plaintiff and LEVENE'S art, was an original physical work of art created and mailed to him along with other guests invited by Plaintiff and LEVENE to the Central St. Martin's event. Robinson has displayed and published this invitation/work of art on the Artlyst website. Robinson has also displayed Plaintiff and LEVENE's Commercial Zone 2014 musical release orange/black/white cd/artwork which on information and belief was made available for sale at the 2016 Art/Boot/Car Fair without Plaintiff's knowledge or consent.

36.   LEVENE's and WARDLE's business association dates back to at least 1978 when both were founding members of the band Public Image, Ltd., also known as "PiL." The two have also collaborated together after WARDLE and LEVENE left PiL in approximately 1980 and 1983 respectively.

37.   On information and belief, GLOVER greatly admires LEVENE's and WARDLE's work with PiL.

38.   In 2011 and 2012, WARDLE and LEVENE worked together on projects which derived income for LEVENE, including a series of concerts called Metal Box in Dub ("MBiD"), and WARDLE operated as

LEVENE's manager for the same. Plaintiff attended one MBiD concert at LEVENE's invitation but did not meet WARDLE, nor did she seek out the opportunity to meet him.

39.   In the summer of 2012, LEVENE advised Plaintiff that WARDLE no longer wished to work with LEVENE any further following their final MBiD concert in late July 2012.

40.   Thereafter, LEVENE and WARDLE had little if any contact and did not work together until sometime after January 2016.

41.   On or about February 28, 2016, Plaintiff received a written communication from Nathan Maverick, the MBiD front person/singer, who stated that Wardle "said that he never wanted to work with Keith again because he was so unreliable, unpredictable, talking down to the crew and techs, shouting abuse at them, clearly using some other form of high and it was becoming less fun." Plaintiff also found LEVENE to be unreliable and unpredictable at times.

42.   Once the MBiD shows ceased, compensation paid to LEVENE for his work with WARDLE also ceased, and LEVENE had no other income-producing work readily available to him or even on the horizon that would allow him to support himself, much less finance his many projects with Plaintiff.

43.   LEVENE's principal source of regular income derived from royalty payments from music made in the 1970s through mid-1980s, which were insufficient for LEVENE to live on. On information and

belief, LEVENE experienced periodic and sometimes prolonged financial problems after he left PiL. In 2012, without proceeds deriving from LEVENE's work with WARDLE, LEVENE experienced severe economic and financial dilemmas.

44. LEVENE'S situation was so dire that on September 6, 2012 LEVENE was sent a Housing Act Section 21(4)(a) Notice Requiring Possession of his rental home in South Wales, the second time in a period of months that he had been involuntarily removed from his rental properties. See Exhibit 3. LEVENE advised Plaintiff that he had relocated to South Wales in 2012 because it was much cheaper for him to live there than it had been in London, where he was renting a property and where he had been evicted from in approximately the Spring of 2012. In between these two evictions, LEVENE had been taken in by family, friends and/or fans.

45. Beginning in 2012 and thereafter, Plaintiff provided LEVENE with loans to assist in covering his living expenses so that the two could work together on the property described in Exhibit 1. Plaintiff also paid for certain of the inputs and services required to develop and fund the music, art, books, merchandise, a film project, special events, and other initiatives the parties collaborated on.

46. In late August 2012, while LEVENE was in Florida, Plaintiff and LEVENE agreed to formalize plans to collaborate and

form a partnership, as shown in Exhibit 1, although by that time they had already been collaborating for some time.

47.   In addition to financing the development of and the property directly, Plaintiff evaluated crowdfunding platforms including Indiegogo, as an additional source of potential revenue for LEVENE, who had never previously operated a crowdfunding campaign. Plaintiff began investigating various crowdfunding platforms and ultimately recommended the Indiegogo platform to LEVENE in 2011 as a way to raise capital for creative projects.

48.   Thereafter, Plaintiff created, developed and helped manage two successful Indiegogo crowdfunding campaigns for LEVENE, one in 2014 (called Commercial Zone 2014) and a second in 2015 (called London 1976), which netted LEVENE in excess of $30,000. All proceeds went to LEVENE directly. In approximately May 2014, LEVENE, without informing Plaintiff, provided his sister Jill Levene Bennett ("Bennett") proceeds from the Commercial Zone 2014 crowdfunding campaign, which were intended to help finance that musical release, for Bennett to pay her taxes. Ongoing problems and interference involving Bennett is one of the reasons why Bennett's name is specifically mentioned in the Contract between Plaintiff and LEVENE, Exhibit 1. On information and belief, LEVENE continued to receive more funds from the Commercial Zone 2014 campaign as late as approximately 2017.

49.  Additionally, by approximately 2013, property created and owned by LEVENE and Plaintiff began selling and LEVENE accepted funds from these sales. Per LEVENE's and Plaintiff's agreement arising from LEVENE'S ongoing financial problems, LEVENE kept these proceeds with the understanding that Plaintiff's return on investment was to commence in 2016, something which was never realized because of LEVENE'S spiteful conduct and malice and his continuous ongoing material breaches of his duties under the Contract, which also commenced in 2016.

50.  With respect to managerial decisions involving the property described in Exhibit 1, LEVENE recommended and the Plaintiff and LEVENE agreed that the Plaintiff should be the majority owner and majority decision-maker regarding matters related to the property. Furthermore, their agreed-to ownership interests in the property are 51% in favor of Plaintiff to 49% in favor of LEVENE; See Exhibit 1.

51.  In approximately January 2016, after having received enormous benefits arising from his association with Plaintiff for years and before Plaintiff's return on her investment had matured, LEVENE began behaving and/or continuing to behave in ways that were inconsistent with his position as minority owner of the property and adverse to Plaintiff's role as majority owner and decision-maker.

52.  Plaintiff directed LEVENE to stop but LEVENE refused.

53.   Plaintiff advised LEVENE that if he continued to behave in this manner she would put third parties, who LEVENE was in contact with concerning the property, on notice of her interests in said property.

54.   LEVENE disregarded this instruction and as a result the Plaintiff put third parties on notice of her majority interests in the property.

55.   This functioned to enrage LEVENE.

56.   LEVENE retaliated by propagating his myth, which continues to the present time, that he was and is the sole financer, creator and owner of the property financed, created and owned with Plaintiff, which is patently false. LEVENE has materially breached the Contract in numerous ways including but not limited to:

a.   From January 2016 to date, LEVENE has behaved in a vicious manner toward Plaintiff and has publicly declared to his fans and the public at large that Plaintiff has no interests in her own property. LEVENE has gone so far as to publicly state that Plaintiff has stolen from him, when if anything the opposite is more reflective of reality.

b.   At all times from January 2016 to date, LEVENE has wrongfully held himself out as the sole financier, owner and creator of the property.

c.    From   January   2016   to   date,   LEVENE   has   promoted, exploited, traded, sold, and made unauthorized modifications to  the  property  and  kept  all  proceeds  and  benefits  for himself.

d.    From January 2016 to date, LEVENE has failed to apprise or inform Plaintiff as to what he is, has been or is intending to   do   with   the   property   including   any   unauthorized modifications to the same.

e.    LEVENE has allowed unauthorized third parties including but not limited to GLOVER, WARDLE, CARROLL, ENGLAND, CADIZ, BENNETT   and   particularly   KATHERINE   GENTY   RANSFORD ("Ransford"), a stranger to Plaintiff and an individual who played no role whatsoever in the financing and creating of the  property,  to  be  involved  with  the  property,  and  has continued to do so even after being directed by Plaintiff to stop.

f.    In approximately February 2016 and thereafter, LEVENE intentionally pushed Plaintiff out of her rightful role in an immensely important event she designed and created, and which was anticipated to be extremely lucrative from financial and public   relations   perspectives,   called   the   London   1976 Festival at the historic Screen on the Green theatre. See Composite Exhibit 4. Plaintiff came up with the idea for the festival  and  its  location  at  the  1913  era  art  deco  style

single screen historic Screen on the Green theatre. She also purposely selected August 29, 2016 as the proposed date for the event because that date would have been 40 years to the day of the much celebrated "Midnight Special" at the Screen on the Green, when LEVENE as a member of the influential Clash band had appeared on a bill that included two other influential bands: The Sex Pistols and the Buzzcocks. This event was so historically significant that a large mural reproducing an advertisement for the August 29, 1976 Midnight Special hung in the Screen on the Green's lobby and a second smaller image of the 1976 Midnight Special advertisement hung over one of the tables inside the theatre itself on the dates when Plaintiff visited the venue in efforts to secure it for the London 1976 Festival in November 2015.

g.   The London 1976 Festival at the Screen on the Green was conceived by Plaintiff to introduce, showcase, promote and sell Plaintiff's and LEVENE's art, music, books, merchandise and other property. It was also intended to display a film that they were collaborating on dealing with their work called London 1976. The event was strategically planned by Plaintiff to coincide with British Punk's 40th anniversary year, a year when events were scheduled to be held and were in fact held across London. There was no question that The London 1976 Festival had the potential to help Plaintiff finally begin to

Bonczyk v. Levene, et al.; Case Number 2018-CA- 010630-O
Second Amended Complaint                                                    Page **19** of 45

see a return on her years of financial investments and work.
In December 2015, shortly after The Everyman Group consented
to having the London 1976 Festival occur there on August 29,
2016, Daniel Prince, a Solicitor with the Pearson Solicitors
and Financial Advisors firm, a long term fan of LEVENE and
punk music, who met LEVENE through Plaintiff, who had
purchased a copy of "I Was a Teenage Guitarist for the Clash"
(property identified in Exhibit 1) in November 2015 at the
Louder than Words festival which was arranged for by
Plaintiff, and who had filmed LEVENE's appearance there,
purchased the first two seats for the Screen on the Green
event. Prince paid LEVENE approximately $1,500 for those
seats and accompanying merchandise. See Composite Exhibit 4.
The Screen on the Green had approximately 75 more seats,
couches and tables that could have been sold for that amount.
h. LEVENE himself clearly recognized the festival's
importance and potential. In January 2016 he publicly
referred to it as the "apex" of "three years" of his and
Plaintiff's "work together" on his former Linked In social
media account. See Composite Exhibit 4. LEVENE agreed with
Plaintiff that they should proceed and attempt to secure the
Screen on the Green theatre for the event, which was not as
simple a task as picking up a telephone and renting the
protected facility on a credit card. LEVENE and Plaintiff had

no relationship to the theatre's owners, The Everyman Group,
its management or even any of its employees, and had no
contacts who could open a door and vouch for them. Securing
the protected theater for the purpose intended by Plaintiff
required Plaintiff, not LEVENE, to initiate communications
with the theatre's representatives from scratch, introducing
Plaintiff and LEVENE to the venue's owners and management,
and convincing them to agree to lease the Screen on the Green
for the London 1976 Festival. Plaintiff arranged for two
meetings on two different days between herself and LEVENE
with the theatre's management. Plaintiff and LEVENE traveled
to and toured the theatre, met with employees and explained
the concept of the London 1976 Festival, showed management
samples of Plaintiff's and LEVENE's work product and did more
in an effort to obtain consent to hold the August 29, 2016
event there. Plaintiff played an instrumental role in
persuading the Everyman Group to authorize The London 1976
Festival to be held at the Screen on the Green. Plaintiff was
ultimately successful in achieving this goal. In December
2015 an agreement was secured for the use of the theatre for
the planned August 29, 2016 event.

i.   By February 2016 LEVENE's malice had grown so great that
without informing Plaintiff, he contacted the Everyman Group
and changed the name of the event from "The London 1976

Festival," which had Plaintiff's name attached, to "Keith
Levene 2016," without mention of Plaintiff's name, to occur
on the very same night of August 29, 2016 that Plaintiff had
arranged. LEVENE's public actions revealed his intention to
proceed with the lucrative event under the revised name with
the guise that it was made possible by LEVENE's work, ideas,
finances and concepts alone. By March 2016, LEVENE began
publicizing the now Keith Levene 2016 Screen on the Green
event on social media. In a two part article on LEVENE
published in the June 2016 editions of the *California Rocker*
magazine entitled "Exclusive: Keith Levene Touts Screen on
the Green Event…," LEVENE referenced the event but, in further
efforts to take all credit for the prior years of work with
Plaintiff for himself, made no mention of Plaintiff's
enormous financial and creative contributions, including
coming up with the concept or making the London 1976 Festival
possible. Nor did he mention that Plaintiff had taken the
financially strapped LEVENE, slapped with two evictions and
homelessness in 2012, when the preponderance of work with
Plaintiff began, and brought him to his elevated status in
mid-2016 with music, art and other property co-owned by
Plaintiff for LEVENE to promote and sell. Accompanying said
magazine article is LEVENE in photos wearing a suit purchased
for him as an investment by Plaintiff the year before in order

to help promote his image as a serious composer. These photographs were taken by the photographer Mel Smith, who Plaintiff had introduced to LEVENE, in a photo shoot arranged by Plaintiff at the 2015 Louder than Words festival in Manchester. LEVENE's spiteful and intentional conduct caused Plaintiff to suffer losses in the form of the anticipated publicity and good will the Screen on the Green event would likely bring to her as well as profits that were never realized.

j.    In approximately May 2016, after Plaintiff notified LEVENE that she had donated one of their prototypes entitled "I Was a Teenage Guitarist for the Clash" to the British Library to be showcased as part of a 40th anniversary of Punk exhibition there, LEVENE and/or someone on his behalf maliciously contacted the British Library and thereafter the item was removed with no notice to  Plaintiff.

k.    From January 2016 to date, LEVENE, assisted by Ransford and others, has consistently and intentionally interfered with Plaintiff's ability to exploit her own property and to receive benefits associated with it and receive the public credit for her work and her substantial investments that she is entitled to receive.

l.    At some point after February 2016, LEVENE began renaming music created during his years of work with Plaintiff, which

is referenced in Exhibit 1 and was funded by Plaintiff's direct financial investments and monies earned by LEVENE through crowdfunding proceeds and sales of work created by Plaintiff, and presented this renamed music as his "new" work created, owned and presumably financed entirely by LEVENE.

m.   LEVENE has enjoyed a windfall of monetary and other benefits arising from Plaintiff's investments to Plaintiff's detriment.

57.   LEVENE continues to completely repudiate his contractual obligations to Plaintiff and continues to enjoy ongoing benefits resulting from his work with Plaintiff.

58.   After LEVENE began materially breaching the contract, GLOVER was present at an event in 2016 called the "Art/Car/Boot Fair," where property co-owned with Plaintiff and created with the process developed and perfected with Plaintiff during the years they worked together, was promoted and displayed for sale over Plaintiff's objections by LEVENE and RANSFORD, the latter of whom is believed to be an acquaintance of GLOVER.

59.   GLOVER purchased art from RANSFORD and LEVENE that day. GLOVER also introduced LEVENE to another musician named Jimmy Cauty who himself purchased art from LEVENE and RANSFORD at that event. LEVENE did not report the amount of proceeds earned or provide Plaintiff with her rightful share of these proceeds, something he repeated at a second public event accompanied by RANSFORD at the

Underdog Gallery in October 2016, where artwork co-owned with Plaintiff was displayed by LEVENE, who as always publicly held himself out as the sole creator and owner and retained all proceeds for himself.

60.  On information and belief, LEVENE became involved with RANSFORD at some point in 2016 after the time LEVENE began materially breaching his contract with Plaintiff.

61.  Over Plaintiff's continuing objections, LEVENE has from 2016 and thereafter authorized RANSFORD, who in 2018 was sent correspondence from Plaintiff's counsel directing her to cease and desist from interfering with Plaintiff's property and the Contract with LEVENE, and who phoned Plaintiff's counsel's office after said correspondence was sent to her and nonetheless continues to interfere with Plaintiff's property rights and Contract with LEVENE, to be centrally involved in the unauthorized management, sale, promotion and distribution of Plaintiff's work including but not limited to a project LEVENE created with RANSFORD called "itwaspunk," which itself is an unauthorized modification of Plaintiff's project with LEVENE called London 1976 and/or the Institute. See Exhibit 1.

62.  On information and belief, WARDLE and/or ENGLAND have been in contact with RANSFORD.

63.   On information and belief, LEVENE reestablished contact with WARDLE and GLOVER in 2016 at or after the time he began materially breaching his contract with Plaintiff.

64.   At some point, LEVENE began to make plans to and/or did in fact conduct business with one or both. The song "A Very British Coup" by WARDLE and GLOVER, in which LEVENE is credited as playing guitar on, includes guitar work which is substantially similar to a musical release owned by Plaintiff called "I Was a Teenage Guitarist for the Clash" arising from Plaintiff's considerable work with LEVENE involving his time with the Clash. See paragraph B.a)6 of Exhibit 1 where this musical release is specifically referenced. See also TX0007936042, dated July 2, 2014, United States Copyright Office, Washington, DC.

65.   In March 2018, Plaintiff's counsel provided WARDLE with a copy of Exhibit 1 and thus put WARDLE on actual notice of Plaintiff's property interests in "I Was a Teenage Guitarist for the Clash" musical release amongst a number of her other property interests and Contract with LEVENE. Nonetheless, WARDLE interfered with Plaintiff's property interests and Contract with LEVENE thereafter.

66.   On April 16, 2019, ENGLAND sent unsolicited correspondence to Plaintiff on behalf of himself and WARDLE, GLOVER and CARROLL acknowledging Plaintiff's management interests concerning LEVENE, advising that ENGLAND was about to release music

on behalf of GLOVER and WARDLE involving LEVENE, and wanting to learn of Plaintiff's restrictions relative to the same.

67.   In later correspondences, it would become clear that the music ENGLAND was referencing was "A Very British Coup," by WARDLE and which involved GLOVER as both a performer and producer. ENGLAND also discussed the production of a music video, which it was later learned intricately involved CARROLL. Additionally, GLOVER had also released "A Very British Coup" on his "Youth Sounds" label just a few weeks earlier in late March 2019, shortly before ENGLAND first emailed Plaintiff, without crediting Plaintiff or consulting her before GLOVER did.

68.   Upon noticing certain similarities between "I Was a Teenage Guitarist for the Clash" and "A Very British Coup" and noting the latter credited LEVENE on guitar, Plaintiff raised objections to this release.

69.   Plaintiff does not know ENGLAND and had no contact with him prior to April 16, 2019. Plaintiff has never met WARDLE, GLOVER and CARROLL.

70.   ENGLAND's April 16, 2019 email to Plaintiff initiated a prolonged and substantial written dialogue which continued through September 2019 and required Plaintiff to expend a significant investment of time and attorney's fees, and also resulted in a written agreement between Plaintiff and ENGLAND and/or CADIZ on behalf of GLOVER, WARDLE AND CARROLL.

71.   In April 2019, ENGLAND and CADIZ, who confirmed in writing LEVENE had a writing credit on "A Very British Coup," were provided with a copy of Exhibit 1 and a You Tube link to "I Was a Teenage Guitarist for the Clash" and thereby put on actual notice of Plaintiff's property and Contract with LEVENE and the similarities between "I Was a Teenage Guitarist for the Clash" and "A Very British Coup." Although ENGLAND and CADIZ stated in April 2019 that LEVENE had an official writing credit on "A Very British Coup," LEVENE did not ultimately receive a writing credit on the final release offered up for sale by ENGLAND and CADIZ on behalf of WARDLE, GLOVER and CARROLL later in the year. On information and belief, this constituted an intentional maneuver by Defendants to distance Plaintiff from any involvement in the recording.

72.   In their email of April 24, 2019, ENGLAND and CADIZ on behalf of GLOVER, WARDLE and CARROLL agreed to pay and report sales royalties to Plaintiff, representing 5% of "A Very British Coup" in return for her authorization to release the music. ENGLAND and CADIZ acknowledged a 51% royalty payment split in favor of Plaintiff to LEVENE'S 49% royalty payment as demanded by Plaintiff and reflective of Plaintiff's and LEVENE's respective majority to minority share in their property.   ENGLAND and CADIZ also met Plaintiff's demands that Plaintiff receive a songwriting credit and that "I Was a Teenage Guitarist for the Clash" be specifically credited on the "A Very British Coup" music release. ENGLAND and

CADIZ did so after being provided a link to "I Was a Teenage Guitarist for the Clash" music and advised of its similarities to "A Very British Coup."

73.  In later emails, ENGLAND and CADIZ informed Plaintiff's counsel such things as that a professional public relations company would be employed to help promote "A Very British Coup," that a video shoot was planned an initiative that it would be later learned involved CARROLL, and that a vinyl recording of "A Very British Coup" would be available for sale by late August 2019. ENGLAND and CADIZ also provided Plaintiff through counsel with breakdowns of all personnel involved in the "A Very British Coup" release, including Michael Rendell, who is credited as engineering, remixing and mastering "A Very British Coup." The names of LEVENE and Plaintiff appear twice and credits to "I Was a Teenage Guitarist for the Clash" also appear, as agreed to by ENGLAND and CADIZ on behalf of GLOVER, WARDLE and CARROLL, having been acknowledged and accepted as the official credits for "A Very British Coup." Moreover, Plaintiff provided ENGLAND and CADIZ with recommendations as to marketing, sales and promotional strategy for "A Very British Coup."

74.  A reasonable person in Plaintiff's position would understand and take these and other communications between herself and  ENGLAND and CADIZ on behalf of GLOVER, WARDLE and CARROLL from April 16, 2016 and thereafter as recognition by ENGLAND,

CADIZ, GLOVER, WARDLE and CARROLL of Plaintiff's property interests and Contract with LEVENE, of the acceptance of similarities between "I Was a Teenage Guitarist for the Clash" and "A Very British Coup," that an agreement had been made in Orange County, Florida, over the internet regarding the use of Plaintiff's property, that sales royalties would be reported and paid to Plaintiff and that Plaintiff would be credited on "A Very British Coup" and Plaintiff so understood them and took them in this manner. Plaintiff, for instance, relying on the promises made to her by ENGLAND, CADIZ, GLOVER, WARDLE and CARROLL, began publicizing and promoting her interest in and credit on "A Very British Coup" commencing in approximately June 2019.

75. Serving as further evidence of GLOVER's and WARDLE's agency relationship with ENGLAND and CADIZ, in approximately February 2019 GLOVER was involved with a crowdfunding campaign on the Kickstarter platform to raise monies for a colored vinyl album edition of "A Very British Coup" in which GLOVER appears in a video discussing the music, WARDLE, LEVENE and other matters while soliciting "pledges" from fans. The Kickstarter campaign was however "cancelled" and thus the colored vinyl "A Very British Coup" recording was not released by GLOVER. Beginning in late August 2019 and thereafter, however, colored vinyl recordings of "A Very British Coup" were promoted and offered up for sale and were sold by ENGLAND and CADIZ on behalf of GLOVER and WARDLE.

Furthermore, WARDLE was heavily involved in the sale and promotion of the vinyl recording along with ENGLAND and CADIZ upon its release. The fact that ENGLAND and CADIZ, having already distributed and sold download versions of "A Very British Coup" in July 2019, went on to  release, promote and sell along with WARDLE a colored vinyl version of "A Very British Coup," which appeared to be a duplicate of the vinyl and vinyl artistic covers GLOVER had previously promoted in the failed Kickstarter campaign, further cemented in Plaintiff's mind, as it would in any reasonable person's mind, that ENGLAND and CADIZ were at all pertinent times acting on behalf of GLOVER and WARDLE, as was Plaintiff's understanding that ENGLAND and CADIZ had a long-standing business relationship with GLOVER and WARDLE which consisted of other music and arts related promotional and sales activities for both.

76.  Additionally, on or about May 10, 2019, GLOVER and WARDLE appeared at an event at the Rich Mix night club in London which was promoted as a launch party for the "A Very British Coup" project and where GLOVER, WARDLE and another musician named Mark Stewart also credited on the "A Very British Coup" release performed the song live together for what was understood to be the first time. During this approximate time, ENGLAND's and CADIZ's communications with Plaintiff through counsel continued and included such topics as that "A Very British Coup" would be distributed as a download by July 6, 2019 in accordance with

Plaintiff's recommendations and with her consent, and that per Plaintiff this timing would be done in order to maximize the exploitation of the property to the benefit of all involved, to which ENGLAND and CADIZ agreed and acted on. The download of "A Very British Coup" was made available for sale by ENGLAND and CADIZ and, unlike when GLOVER previously released it, Plaintiff did not object relying on the written agreement that she would be properly credited and be paid royalties.

77.   However, after Plaintiff provided her authorization to ENGLAND and CADIZ, certain problems, most critically a lack of communication from ENGLAND and CADIZ to Plaintiff, began transpiring. To obtain information on how matters were progressing from ENGLAND and CADIZ sometimes required follow-up emails to ENGLAND and CADIZ by Plaintiff's counsel, which functioned to increase Plaintiff's indebtedness for attorney's fees. At no time did ENGLAND or CADIZ ever initiate any communications to keep Plaintiff informed of what was going on with her property.

78.   For instance, despite the fact that ENGLAND, CADIZ, WARDLE, GLOVER and CARROLL had actual notice of Plaintiff's management interests involving LEVENE arising from their Contract, on information and belief LEVENE was contacted to appear for "A Very British Coup" video shoot in the summer of 2019 without any notice to Plaintiff.

79.   Neither ENGLAND nor CADIZ ever disclosed to Plaintiff that LEVENE would be directly involved in the video shoot or anything else for that matter concerning "A Very British Coup" beyond being credited and paid royalties for work already performed.

80.   In late August 2019, ENGLAND and CADIZ formally offered up "A Very British Coup" for sale in the form of a colored vinyl album which appeared to be a duplicate of the colored vinyl album and cover which was displayed in the failed Kickstarter campaign, and credited it to CADIZ and GLOVER'S "Youth Sounds" label. Consistent with their failure to keep Plaintiff apprised with what was transpiring with her property and the rights she had entrusted them with, ENGLAND and CADIZ did not inform Plaintiff that the vinyl record had actually been released for sale or apprise her of any information such as pricing and costs which would directly bear on Plaintiff's royalties.

81.   On information and belief, ENGLAND and CADIZ on behalf of GLOVER, WARDLE and CARROLL have received and may be continuing to receive an unknown amount of monies arising from the sale of "A Very British Coup," a portion of which Plaintiff is entitled to. ENGLAND and CADIZ have intentionally and completely kept Plaintiff in the dark regarding these and all other relevant matters.

82.   Furthermore, Plaintiff's name and that of LEVENE's as well as "I Was a Teenage Guitarist for the Clash" never appeared

anywhere in any of the publicity or articles promoting "A Very British Coup," on any social media postings, on ENGLAND's and CADIZ's website where they promoted the record and accepted payments, on the final writing credits for the release or anywhere else in the way ENGLAND and CADIZ had agreed that this information would appear as official credits.

83.   In late August 2019, Plaintiff's counsel wrote emails to ENGLAND and CADIZ concerning these and other ongoing problems with them and demanded that ENGLAND and CADIZ cease and desist from further involvement in Plaintiff's property until such time that these problems could be rectified. Plaintiff has since demanded that ENGLAND and CADIZ stop selling, promoting and exploiting her property, which ENGLAND and CADIZ have blatantly refused to do and continue to do so to the present time.

84.  In early September 2019, ENGLAND and CADIZ wrote back to Plaintiff's counsel and for the first time over the approximately five months they were communicating ENGLAND and CADIZ stated that Plaintiff had no interest in "A Very British Coup" due to a purported total assignment from LEVENE to WARDLE of all relevant rights concerning LEVENE's work on the recording. ENGLAND and CADIZ now claimed that GLOVER and WARDLE owned this property and that CADIZ company had the exclusive right to distribute the recording. Prior to this time ENGLAND and CADIZ never communicated anything to Plaintiff of a change in their prior written agreement that

Plaintiff would be credited and receive royalties, or that ENGLAND, CADIZ, GLOVER, WARDLE and CARROLL were now unilaterally purportedly completely rescinding their written agreement with Plaintiff. See Composite Exhibit 2.

85.   ENGLAND and CADIZ had never previously disclosed this supposed assignment, something which one would expect they and WARDLE knew or should have known of by April 16, 2019, when ENGLAND and CADIZ initiated their nearly five months contact with Plaintiff and/or Plaintiff's counsel. See Composite Exhibit 2.

86.   Also, for the first time ENGLAND and CADIZ now claimed that LEVENE and WARDLE had worked on "A Very British Coup" in 2014, and for the first time ENGLAND and CADIZ produced an alleged undated and unsigned statement purportedly from LEVENE asserting that LEVENE and WARDLE collaborated on the recording in 2014 and that all of LEVENE's rights had been tendered to WARDLE. See Composite Exhibit 2.

87.   Also for the first time, ENGLAND and CADIZ denied that "A Very British Coup" bore similarities to "I Was a Teenage Guitarist for the Clash," despite the fact that after being provided a You Tube link in April 2019 to the "I Was a Teenage Guitarist for the Clash" recording, ENGLAND's and CADIZ's response was their agreement to credit Plaintiff as she demanded and pay royalties as she demanded, and thereafter continued communications

with Plaintiff through counsel for nearly five months confirming same. See Composite Exhibit 2.

88.   In early September 2019, Plaintiff's counsel wrote back to ENGLAND and CADIZ and sought proof of ENGLAND's new assertions that WARDLE and LEVENE had worked together in 2014, as Plaintiff who had worked consistently with LEVENE that year believed this to be a patently false statement of when the alleged assignment from LEVENE occurred. ENGLAND replied with a revised second unsigned and undated statement purportedly from LEVENE which now changed the timeframe to 2016 as the year when LEVENE had worked on "A Very British Coup." See Composite Exhibit 2.

89.   These allegations completely contradict LEVENE'S written admissions of January 26, 2016, in an email to Plaintiff where he confirms what their written and verbal agreements stated: That Plaintiff in fact owns a 51% majority interest in their work together to his minority 49% interest. See Exhibit 5.

90.   The language in ENGLAND's and CADIZ's correspondences of September 2019 and in particular of September 2, 2019 is wholly inconsistent with their laymen's language contained within their prior correspondences. For instance, in their September 2, 2019 letter, ENGLAND and CADIZ proffered such legal arguments and conclusions as "For the avoidance of doubt Keith Levene has assigned his rights in the recording to Wobble and Youth for perpetuity and totality." See Composite Exhibit 2.

91.   The  second  revised  statement  from  LEVENE  states  in
pertinent part "Any rights re material performed on any versions
or releases of 'A Very British Coup' were 100% signed off for use
to Jah Wobble at the commencement of the project and no body else."
See Composite Exhibit 2.

92.   These  alleged  statements  from  LEVENE  produced  by
ENGLAND and CADIZ for the first time in September 2019, and which
appear  to  have  been  written  at  or  about  that  time  and  in  direct
response to questions raised by Plaintiff's counsel to ENGLAND and
CADIZ,  claimed  LEVENE  would  appear  to  give  sworn  testimony  to
substantiate his written statements. As it appeared that LEVENE's
statements  served  as  the  basis  for  ENGLAND,  CADIZ,  WARDLE,  GLOVER
and  CARROLL's  unilateral  purported  rescission  of  their  written
agreements  made  months  before  with  Plaintiff  concerning  "A  Very
British Coup," without providing the common courtesy of notifying
Plaintiff of this rescission, Plaintiff's counsel sought ENGLAND's
and CADIZ's assistance in producing LEVENE to give sworn testimony
as  to  the  matters  he  was  allegedly  claiming  in  the  two  written
statements produced by ENGLAND and CADIZ.  However, ENGLAND and
CADIZ  refused  to  take  any  action  to  assist  in  producing  LEVENE,
advising  Plaintiff's  counsel  that  he  would  have  to  take  this  up
with LEVENE himself. See Composite Exhibit 2.

93.   In November 2019, Plaintiff was advised in writing that
two  other  musical  artists  involved  in  the  "A  Very  British  Coup"

project had property which appeared on "A Very British Coup" as well as in a prior WARDLE release and that the latter was used without clearance. Per this communication and as with Plaintiff, a written agreement existed concerning rights relative to "A Very British Coup" which was apparently not complied with and also like Plaintiff and LEVENE, one of these artists did not receive a writing credit on the official release credits for her work. Also according to this communication, these artists were so disappointed with how matters had progressed on "A Very British Coup" that they dropped out of the project entirely.   On information and belief, their names are still attached to "A Very British Coup" to the present time and were attached to "A Very British Coup" both before and at the time of the aforementioned CARROLL, ENGLAND and CADIZ's produced music video, in which neither of these two artists appear, one of whom is a high profile artist with name recognition based on his past work achievements and successes.

94.   On information and belief, ENGLAND, CADIZ, GLOVER, CARROLL, WARDLE and/or others continue to sell, promote, exploit and display "A Very British Coup" over Plaintiff's objections. WARDLE in particular has been very aggressive in promoting and selling "A Very British Coup."

95.   ENGLAND's and CADIZ'S conduct on behalf of WARDLE, GLOVER, and CARROLL is shocking, malicious, spiteful, egregious

and offensive, served no legitimate purpose other than to harass and humiliate Plaintiff and to interfere with her Contract with LEVENE and deprive her of the benefits of her property interests as well as to cause Plaintiff to be required to expend unnecessary attorney's fees in receiving and reviewing ENGLAND's and CADIZ's multiple communications, and then responding to same or initiating numerous further communications to ENGLAND and CADIZ from April through September 2019.

96.  As such these actions merit the entry of an award of punitive damages against ENGLAND, CADIZ, GLOVER, WARDLE and CARROLL and it is anticipated that Plaintiff will in discovery seek facts to support the possible award of punitive damages and upon the uncovering of such further evidence will seek leave of court to plead them.

97.  As a proximate cause of the conduct by LEVENE, WARDLE, GLOVER, CARROLL, ENGLAND and CADIZ, Plaintiff has suffered damages.

### COUNT 1
### BREACH OF CONTRACT
### (DEFENDANT LEVENE)

98.  Plaintiff realleges and restates the allegations set forth in Paragraphs 1-97 as if fully stated herein.

99.  Plaintiff and LEVENE entered into an enforceable contract.

100. Plaintiff performed all essential duties which the contract required her to perform.

101. All conditions required by the contract for LEVENE'S performance had occurred.

102. LEVENE failed to perform in such a manner in which the contract required him to do and/or did something which the contract prohibited him from doing.

103. Plaintiff has been harmed by LEVENE'S failure to perform.

104. LEVENE has breached the contract and continues to do so.

105. Plaintiff has suffered and continues to suffer damages as a result of LEVENE'S breach of the contract.

### <u>COUNT 2</u>
### TORTIOUS INTERFERENCE
### (DEFENDANTS GLOVER, WARDLE, CARROLL, ENGLAND and CADIZ)

106. Plaintiff realleges and restates the allegations set forth in Paragraphs 1-97 as if fully stated herein.

107. A valid contract exists between Plaintiff and LEVENE.

108. GLOVER, WARDLE, CARROLL, ENGLAND and CADIZ knew about the contract.

109. GLOVER, WARDLE, CARROLL, ENGLAND and CADIZ took actions intending to induce a breach or disruption of the contract.

110. There were no legal justifications for these Defendants' actions.

111. Plaintiff has suffered damages as a result of these Defendants' actions.

## COUNT 3
### CONSPIRACY
**(DEFENDANTS GLOVER, WARDLE, CARROLL, ENGLAND, CADIZ AND LEVENE)**

112. Plaintiff realleges and restates the allegations set forth in Paragraphs 1-97 as if fully stated herein.

113. A conspiracy between GLOVER, WARDLE, CARROLL, ENGLAND, CADIZ and LEVENE exists to do an unlawful act or to do a lawful act by unlawful means in depriving plaintiff of the benefits of her property and interfering with her business relationship with LEVENE.

114. GLOVER, WARDLE, CARROLL, ENGLAND, CADIZ and LEVENE did one or more overt acts in pursuance of the conspiracy;

115. Damage to Plaintiff has occurred as a result of the acts performed pursuant to the conspiracy.

## COUNT 4
### FRAUDULENT INDUCEMENT
**(DEFENDANTS GLOVER, WARDLE, CARROLL, ENGLAND and CADIZ)**

116. Plaintiff realleges and restates the allegations set forth in Paragraphs 1-97 as if fully stated herein.

117. ENGLAND and CADIZ on behalf of GLOVER, WARDLE and CARROLL had knowledge that a false statement or statements of material facts proffered in written communications from April 16, 2019 through September 2019 were untrue.

118. ENGLAND and CADIZ on behalf of GLOVER, WARDLE and CARROLL intended to dupe or cause damage to Plaintiff resulting from their false statement or statements.

119. Justifiable confidence and reliance by Plaintiff on the statement or statements proffered by ENGLAND and CADIZ on behalf of GLOVER, WARDLE and CARROLL resulted.

120. Plaintiff suffered injuries as a result of this/these false statement/statements.

### COUNT 5
### MISAPPROPRIATION
**(DEFENDANTS GLOVER, WARDLE, CARROLL, ENGLAND and CADIZ)**

121. Plaintiff realleges and restates the allegations set forth in Paragraphs 1-97 as if fully stated herein.

122. GLOVER, WARDLE, CARROLL, ENGLAND, and CADIZ knowingly obtained and/or used Plaintiff's property with the intent to either temporarily or permanently deprive Plaintiff of the right to her property or a benefit from her property, and appropriated the property owned by Plaintiff for their own use or to the use of any person not entitled to the use of the property.

123. Plaintiff suffered damages as a result thereof.

### COUNT 6
### BREACH OF CONTRACT
**(DEFENDANTS GLOVER, WARDLE, CARROLL, ENGLAND, and CADIZ)**

124. Plaintiff realleges and restates the allegations set forth in Paragraphs 1-97 as if fully stated herein.

125. Plaintiff and GLOVER, WARDLE, CARROLL, ENGLAND, and CADIZ entered into an enforceable contract.

126. Plaintiff performed all essential duties which the contract required her to perform.

127. All conditions required by the contract for GLOVER, WARDLE, CARROLL, ENGLAND and CADIZ'S performance had occurred.

128. GLOVER, WARDLE, ENGLAND, CARROLL and CADIZ failed to perform in such a manner in which the contract required them to do and/or did something which the contract prohibited them from doing.

129. Plaintiff has been harmed by GLOVER, WARDLE, CARROLL, ENGLAND and CADIZ's failure to perform.

130. GLOVER, WARDLE, ENGLAND, CARROLL and CADIZ have breached the contract and continue to do so.

131. Plaintiff has suffered damages as a result of their breach of the contract.

## APPLICATION FOR AN INJUNCTION
### (DEFENDANT LEVENE)

132. Plaintiff seeks the entry of an injunction prohibiting LEVENE from continuing to materially breach the Contract between the parties, from licensing, trading, promoting, and/or selling property owned by and with Plaintiff, and soliciting and accepting payments for said property through PayPal and/or any other means. In light of LEVENE'S past stubborn, spiteful, malicious, and ongoing illegal conduct of nearly four years duration, there is no

adequate remedy at law that would serve to prevent further irreparable harm to Plaintiff by LEVENE. The public interests support the entry of an injunction as it would help ensure that LEVENE complies with his lawful obligations in accordance with the Contract.

## APPLICATION FOR AN INJUNCTION
### (DEFENDANTS GLOVER, WARDLE, CARROLL, ENGLAND and CADIZ)

133. Plaintiff seeks the entry of an injunction as to Defendants GLOVER, WARDLE, CARROLL, ENGLAND and CADIZ preventing them from interfering with Plaintiff's property rights and business relationship with LEVENE, including property Plaintiff owns by copyright. Plaintiff seeks the entry of an order prohibiting Defendants from further infringing on her property and copyrights by selling her property in person or via the internet including but not limited to on EBAY, from creating, displaying, and posting promotional music videos and other content including but not limited to the CARROLL, ENGLAND and CADIZ's produced video posted on You Tube  (https://www.youtube.com/watch?v=TWI61RSle1A) and furthermore for ENGLAND, CADIZ, CARROLL and any other of their employees, contractors, subcontractors, associates, assigns and/or any third party to cease and desist from creating, marketing and producing any content involving "A Very British Coup" and displaying the same on the internet or elsewhere, and from soliciting and accepting payments for "A Very British Coup" through

PayPal, credit card, cash, cryptocurrency, and/or any other means on behalf of themselves, WARDLE, GLOVER, LEVENE and/or any other party. There is no adequate remedy at law that would serve to prevent further irreparable harm.  The public interests support the entry of an injunction as it would help ensure that LEVENE complies with his lawful obligations in accordance with his Contract with Plaintiff and that GLOVER, WARDLE, ENGLAND, CARROLL and CADIZ cease assisting LEVENE in repudiating LEVENE's obligations under the Contract with Plaintiff and from continuing to promote, market, sell and/or exploit Plaintiff's work product and property without her consent.

## **ATTORNEY'S FEES AND COSTS**

134. Plaintiff retained the undersigned counsel to represent her in this action and has become obligated to pay him attorney's fees; plus Plaintiff has incurred and will further incur costs in this litigation.

135. Under the attached Contract, Defendant LEVENE is liable to pay Plaintiff's attorney's fees and costs.

136. As assignees of property under the attached Contract, GLOVER, WARDLE, ENGLAND, CARROLL and CADIZ are liable to pay Plaintiff's attorney's fees and costs.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages, attorney's fees and costs, the issuance of injunctions against Defendants, and any other relief as may be just and proper.

Bonczyk v. Levene, et al.; Case Number 2018-CA- 010630-O
Second Amended Complaint                                                                    Page **45** of **45**

   **I HEREBY CERTIFY** that this document was e-filed today through

the Florida Courts E-Filing Portal, which will serve the same on

all counsel of record; and that is was emailed today to:

JULIAN KEITH LEVENE famusgorg@gmail.com and keith@itwaspunk.com
MARTIN GLOVER c/o Richard England richard@cadizmusic.co.uk
JOHN WARDLE c/o Tim Smith musiclaw@btconnect.com
JEAN MARIE CARROLL, info@anglocentric.co.uk
RICHARD ENGLAND richard@cadizmusic.co.uk
CADIZ MUSIC AND DIGITAL LTD richard@cadizmusic.co.uk


                              **CPLS, P.A.**
                              Attorneys|Consultants|Mediators
                              201 East Pine Street, Suite 445
                              Orlando, FL 32801
                              Tel 407-647-7887, Fax 407-647-5396
                              www.cplspa.com
                              CPLS File No. 3065-1


November 19, 2019            ALBERTO E. LUGO-JANER, Esq.
                              Florida Bar Number 0972592
                              alugo-janer@cplspa.com

                              *Counsel for Plaintiff*

# Exhibit 1

# CONTRACT

This contract (hereinafter "Agreement") executed on this _17_ day of October 2015, by and between Julian Keith Levene (hereinafter referred to as "Levene") and Kathleen M. Bonczyk (hereinafter referred to as the "Bonczyk" and/or collectively "the Parties") as follows:

## IT IS HEREBY UNDERSTOOD

### A.   Recitals.

1.   The Parties recognize that Bonczyk has provided Levene with significant artistic, business, marketing, public relations, financial, distribution, and operational services as well as a substantial financial investment dating back to approximately September 2012 for various professional projects including but not limited to the following: Levene's "Search 4 Absolute Zero," "Commercial Zone 2014," "Keith Levene's Commercial Zone," "Keith Levene's 2014," "London 1976," "I Was a Teenage Guitarist 4 the Clash," "Meeting Joe: Joe Strummer, the Clash and Me," "Keith Levene's Summer of 1976," "The London 1976 Institute," and "the Institute" projects.

2.   The Parties also recognize that Bonczyk's efforts as described in Paragraph A(1) above have yielded considerable and ongoing qualitative, quantitative and monetary benefits and rewards to Levene and have furthered his career in ways that would not have otherwise been possible without Bonczyk's involvement and commitment as described in Paragraph A(1) above.

3.   The Parties also agree that Bonczyk has not obtained remuneration of any kind in return for any of her past or ongoing services and financial support described in Paragraphs A(1)-(2) above.

4.   The Parties furthermore agree that in light of Bonczyk's significant ongoing contributions and efforts, Levene does now and has always considered Bonczyk to be a full

INITIAL: _____

partner to him with respect to the matters described in Paragraphs A(1)-(2) above.

5. Accordingly, Levene recognizes that in consideration of all past and ongoing services and financial investment Bonczyk has and continues to provide to Levene, Bonczyk should receive the conveyance of rights described more fully in Section B of this Agreement.

6. Additionally, Levene has recommended to Bonczyk that the Parties enter into the instant Agreement to memorialize their partnership that has essentially existed since approximately September 2012 in writing.

7. Levene also acknowledges that he has the right to seek independent counsel of his choosing to review this Agreement before executing same, but has declined to do so of his own free will.

## IT IS, THEREFORE, AGREED AS FOLLOWS:

### B.   Conveyance of Property.

a) Levene hereby assigns and conveys to Bonczyk 51% equity, ownership interest, rights, and title to the following property that the Parties have created, developed, devised, marketed and distributed in the following:

1. Levene's "Search 4 Absolute Zero" musical release.
2. Levene's "Commercial Zone 2014" musical release.
3. "Keith Levene's Commercial Zone" musical release, artwork, custom covers and merchandising.
4. "Keith Levene's 2014" musical release, artwork, custom covers, and merchandising.
5. "Keith Levene's London 1976" Project including but not limited to musical release, film, merchandising, clothing line and other related products.
6. "I Was a Teenage Guitarist 4/for the Clash" aka "I Was a Teen Guitarist 4/for the Clash" aka "I Was a Teen Guitarist" books, musical release, artwork, custom covers,

INITIAL:

                clothing and merchandise.

7.       "Meeting Joe: Joe Strummer, the Clash and Me" musical release, book, custom cover, artwork, clothing and merchandising.

8.       "Keith Levene's Summer of 1976" musical release, "The London 1976 Institute," and "the Institute" projects.

b) The Parties acknowledge that Levene is the one who recommended that the aforementioned split occur on a 51% to 49% ratio basis in favor of Bonczyk so as to ensure effective management of said property in the future. *Avoid a deadlock in the future. And to* [initialed]

c) The conveyance of property referenced in Paragraph B a)(1)- above includes any Present or future changes, modifications, additions, supplementations to the original works.

d) The Parties agree that any material decisions involving the property including but not limited to any changes or modifications to, any deals regarding distribution, use of the property by any third party/parties or entity/entities, or sales of the property must be made mutually, in advance and in writing.

## C. **Royalties.**

a)   In accordance with the rights granted to Bonczyk herein, Levene agrees that Bonczyk will be entitled to receive royalties or licensing fees (herein collectively referred to as the "Royalties") as a result of any future Royalties derived from the projects listed in Paragraph B a)(1)-(8) above.

b)   Royalties shall include any compensation received or promised which directly or indirectly results from the use, exploitation or existence of the projects listed in Paragraph B a)(1)-(8) above or any reproduction from any source whatsoever anywhere in the world on the basis of the 51% split in favor of Bonczyk.

INITIAL: [signatures]

c) Royalties due Bonczyk hereunder that is received by Levene shall be delivered by him to her within fifteen (15) working days from Levene's receipt thereof.

## D. Confidential Status of Business.

a)   The Parties recognize that any and all business activities surrounding the projects listed in Paragraph B a)(1)-(8) above constitute proprietary information and as such should be considered as confidential and not shared by one Party with any other individual or entity without the express advance written consent of the other.

b)   Levene acknowledges that Bonczyk has in the past expressed concerns to Levene regarding his sharing of confidential information regarding the projects listed in Paragraph B a)(1)-(8) above with family, acquaintances, or friends and/or providing free or complimentary copies of this work to certain individuals without discussing the matter with Bonczyk first. Bonczyk has expressed to Levene her belief that engaging in this type of conduct undermines their business relationship and has an overall detrimental effect on the projects that they have worked on. Levene hereby promises that he will refrain from doing so in future.

c)   Should Levene breach his promises set forth in Paragraph D b) above in future, he agrees that he will pay Bonczyk's attorney's fees and costs incurred to enforce this provision of the Agreement as well as any damages against Levene and/or any third party (i.e. for tortious interference with Bonczyk's rights under the instant Agreement and any other claims that are available to her) irrespective of whether or not she is the prevailing party.

d)   Levene also acknowledges that Bonczyk has expressed concerns to him regarding allowing certain third parties including but not limited to his sister Jill Levene Bennett to play an active role in the workings and management of

INITIAL:

e) certain projects listed in Paragraph B a)(1)-(8) above without discussing the matter with Bonczyk first and then allowing the relationship to continue after she has expressed her concerns to him including but not limited to how such actions detrimentally interfered with the Parties' business relationship. Levene promises that he will refrain from doing so in future.

(f) Should Levene breach his promises set forth in Paragraph D d) above in future, he agrees that he will pay Bonczyk's attorney's fees and costs incurred to enforce this provision of the Agreement as well as any damages against Levene and/or any third party (i.e. for tortious interference with Bonczyk's rights under the instant Agreement and any other claims that are available to her) irrespective of whether or not she is the prevailing party.

**E.   Valuable Consideration.**

a)   Levene acknowledges that he has from approximately September 2012 to the date of this Agreement recognized Bonczyk to be his business partner and, furthermore, that her ongoing services and financial investments described in Paragraphs B a)(1)-(8) above constitutes valuable consideration to bind the Parties to this Agreement.

b)   Levene also acknowledges that this Agreement functions to memorialize his and Bonczyk's past and ongoing agreement in writing.

c)   Levene nonetheless acknowledges that he has accepted an additional payment of ten (10) dollars in cash from Bonczyk which he recognizes to be further valuable consideration to bind the parties to this Agreement.

INITIAL:

F.   **Recordkeeping and Right of Inspection.**

a)   The Parties hereby agree to maintain their own accurate business records including but not limited to any and all disbursements, sales, receipts, distribution, negotiations correspondence, texts, social media communications, emails, facsimiles, and other documents related to the projects listed in Paragraph B a)(1)-(8) above.

b)   The Parties, furthermore, agree that upon prior written notice of at least seven (7) days to the other Party that he/she or his/her designated representative shall be permitted unrestricted access to the books and records which in any way pertain to the projects listed in Paragraph B a)(1)-(8) above for inspection and/or photocopying by the Party and/or his/her designated representative.

G.   **Miscellaneous.**

a)   **Binding Effect.** This Agreement shall be binding upon the successors and assigns of the parties.

b)   **Jurisdiction/Applicable Law.** The Parties hereby submit to the jurisdiction of the courts of the state of Florida for the enforcement of this Agreement. This Agreement shall be enforced or construed according to the laws of the State of Florida.

c)   **Severability.** The invalidity or unenforceability of any provision(s) of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect.

INITIALS

d)   **Ambiguities.** Should any future court determine there to be any ambiguous words, language or provisions within this contract, the parties agree that same shall not be construed against the drafter.

INITIAL:

e)   **Attorney's Fees.**  With the exception of the specific agreements set forth in Paragraph D above, in the event that one of the Parties is forced to obtain an attorney to enforce the terms of this Agreement against the other, the Party prevailing in such action of enforcement shall be entitled to the recovery of attorney's fees incurred in such action.

f)   **Covenant of Good Faith and Fair Dealing.** The Parties agree to perform their obligations under this Agreement, in all respects, in good faith.

g)   **Incorporation of Recitals.**  The recitals contained at the beginning of this Agreement are incorporated herein by this reference.

**THE PARTIES AGREE** to the terms and obligations and so execute on the day and date first above mentioned.

_____        10/17/15
Julian Keith Levene

_____        10/17/15
Kathleen M. Bonczyk

01. The SlaB 2014
02. Welcome to the commercial zone
03. After over CZ
04. After Over pt 3
05. Bits of Prague comp
06. Behind the law 2_L stage mix  2
07. New Spirit of UK '(_CZ
08. True Romance
09. Moments Lost CZ
10. 2051isNoW_harmonic forest
11. Call it a day NoW 1
12. They came to dance
13. Prototeen czbi
14. PragueCounTryGent
15. Behind the Law CZ
16. The voice of punk rock
17. Sunshine days 3
18. Clockwork Romance
19. They came to dance ver 2
20. Whats my name 2014
21. Lou ReeD_the factory



Exhibit 2

**From:** Alberto E. Lugo-Janer, Esq.
**To:** Nathalia C. Rocha
**Subject:** FW: Keith Levene
**Date:** Thursday, September 12, 2019 2:14:01 PM
**Attachments:** image001.png



**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

Attorneys | Mediators
Executive Consultants

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

**From:** Richard England [mailto:richard@cadizmusic.co.uk]
**Sent:** Wednesday, September 4, 2019 8:45 AM
**To:** Alberto E. Lugo-Janer, Esq.
**Subject:** RE: Keith Levene

You will have to take this up with Keith Levene directly yourself.

RE

**From:** Alberto E. Lugo-Janer, Esq. [mailto:alugo-janer@cplspa.com]
**Sent:** 04 September 2019 13:24
**To:** 'richard@cadizmusic.co.uk'
**Subject:** RE: Keith Levene

Dear Mr. England:
Concerning this and other sudden changes in Mr. Levene's recollection, as Mr. Levene says he is willing to appear before any court to give sworn testimony, please inquire and let me know about his available dates to take his videotaped deposition in the case pending against him in Orange County, Florida, Case No.2018-CA-010630-O. See by entering this case number at https://myeclerk.myorangeclerk.com/Cases/search

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

**CPLS, P.A.**

Attorneys |
Mediators
Executive
Consultants

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

**From:** Richard England [mailto:richard@cadizmusic.co.uk]
**Sent:** Wednesday, September 4, 2019 5:46 AM
**To:** Alberto E. Lugo-Janer, Esq.
**Subject:** FW: Keith Levene

Dear Alberto

The "A Very British Coup" was originally composed and recorded by Jah Wobble and Youth in London in 2016. Keith Levene's guitar part was added later 2016. Not in 2014, Keith Levene made an error with the date.

Please see the note and statement by Keith Levene below.

Yours faithfully

Richard England


Richard. I re did this and its much better and more specific. I'm pasting it in but the doc's attached.
The most important thing was I'd used the wrong date but I went over the whole thing. Let me know you got this.

K :-


Counterclaim to _Kathleen Bonczyk Takedown Order:- Julian Keith Levene.
Attention: Richard England Cadiz Records.

For the record Kathleen Bonczyk is registered with the New Jersey & Florida bar association working from the legal offices of Alberto E Lugo - Janer ESQ +1 407 647 7887 Florida


It has been brought to my attention Kathleen Bonczyk has sent a DMCA take down order to YouTube regarding the works "A Very British Coup" and is claiming some kind of ownership. This claim is invalid. I am prepared to swear to this fact under oath in any court.

My name is Julian Keith Levene. In 2016 the artist Jah Wobble and myself created the music for the works "A Very British Coup" consisting of 3 separate titles of the same name. Any rights re material performed on any versions or releases of "A Very British Coup" were 100% signed off for use to Jah Wobble at the commencement of the project and no body else. This was and is the understanding I have with Jah Wobble and there are no grounds for anyone else to make a claim toward the intellectual property on any release or stream or sync regarding the works "A Very British Coup.


Julian Keith Levene

---

**From:** Alberto E. Lugo-Janer, Esq. [mailto:alugo-janer@cplspa.com]
**Sent:** 03 September 2019 19:01
**To:** 'richard@cadizmusic.co.uk' <richard@cadizmusic.co.uk>
**Subject:** RE: Keith Levene

Please accept this as my client's second and final request for (1) Mr. Levene's entire statement referenced in your correspondence of September 3, 2019 and (2) Proof that Mr. Wardle produced "A Very British Coup" in 2014.

This is necessary because you initially contacted my client on behalf of Mr. Wardle and Mr. Glover to obtain her authority regarding "A Very British Coup;" and you later agreed in writing to credit her and pay royalties to her on behalf of Mr. Wardle and Mr. Glover. But now you recanted and backtracked after nearly five months of communications to my client or myself.

As stated, my client is seeking this proof in a good faith effort to avoid instituting litigation against Mr. Glover, Mr. Wardle and yourself which may now appear to include possible evidence

**CPLS, P.A.**
Attorneys |
Mediators
Executive
Consultants

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396
This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

---

**From:** Alberto E. Lugo-Janer, Esq.
**Sent:** Tuesday, September 3, 2019 10:09 AM
**To:** 'richard@cadizmusic.co.uk'
**Subject:** RE: Keith Levene

Dear Mr. England:

As I previously advised, my client has directed me to institute litigation against you, Mr. Wardle and Mr. Glover. The claims will include Conspiracy.

I should like to bring to your attention my client's relationship with Mr. Levene was business in nature as her contract states.

One principal business activity that will be introduced into evidence at trial is that Mr. Levene and my client worked consistently together in 2014. A major activity that year involved the development, two month crowd funding and other tasks associated with Commercial 2014 which is well documented: https://www.theguardian.com/music/2014/apr/22/public-image-ltd-pil-keith-levene-crowdfund-relaunch-commercial-zone-album (this article was the direct result of a press release my client sent to the Guardian) as was Mr. Levene's relocation to Prague from the United Kingdom in May 2014 where he remained the rest of the year.

My client worked closely and consistently with Mr. Levene in the UK and Prague the majority of 2014 both before and after he relocated to Prague. My client had access to Mr. Levene's phones, email accounts, computers and other technology which she anticipates will reveal no communication between Mr. Wardle and Mr. Levene. To her knowledge Mr. Wardle advised Mr. Levene following the Mount Fuji Metal Box in Dub July 2012 show he no longer wished to work with him any further which then freed Mr. Levene up to accelerate the work he had already commenced performing with my client. However, proof that Mr. Wardle and Mr. Levene produced A Very British Coup in 2014 as your letter alleges would be helpful. You of course never made mention of this fact in April 2019 when you contacted my client to obtain her permission regarding A Very British Coup or anytime thereafter until your most recent letter.

In a good faith effort to possibly avoid litigation, kindly produce the statement which you attribute to Mr. Levene as well as proof that Mr. Wardle worked with Mr. Levene in 2014.

**CPLS, P.A.**
Attorneys |
Mediators
Executive
Consultants

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396
This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be



unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

**From:** Richard England [mailto:richard@cadizmusic.co.uk]
**Sent:** Tuesday, September 3, 2019 8:25 AM
**To:** Alberto E. Lugo-Janer, Esq.
**Subject:** RE: Keith Levene

In what jurisdiction?

**From:** Alberto E. Lugo-Janer, Esq. [mailto:alugo-janer@cplspa.com]
**Sent:** 03 September 2019 13:05
**To:** 'richard@cadizmusic.co.uk' <richard@cadizmusic.co.uk>
**Subject:** RE: Keith Levene

Dear Mr. England:

This is to put you on notice that my client has directed me to initiate litigation against you, Mr. Glover and Mr. Wardle. It is anticipated that the Complaint will be filed within the next 30 days.



**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

**CPLS, P.A.**
Attorneys |
Mediators
Executive
Consultants

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

**From:** Richard England [mailto:richard@cadizmusic.co.uk]
**Sent:** Tuesday, September 3, 2019 5:19 AM
**To:** Alberto E. Lugo-Janer, Esq.
**Subject:** RE: Keith Levene

I sent this letter yesterday. RE

13 Harmony Place
London

Cadiz Music & Digital Music Ltd

SE8 3FE
UK

Alberto E. Lugo-Janer,
201 East Pine Street, Suite 445
Orlando
Florida 32801
USA

2nd September 2019

Dear Alberto E. Lugo-Janer

Thank you for the email dated 30th August 2019.

However, it is our opinion that your client Kathleen Bonczyk (Kathy Di Tondo)'s claim to own intellectual property on the recording "A Very British Coup" is without merit and we do not require your permission or authorization to release this music which effectively has nothing to do with your client.

The ownership of the copyright in this recording "A Very British Coup" rests with John Wardle (Jah Wobble), Martin Glover (Youth) and has been assigned to Cadiz Music & Digital Ltd, 13 Harmony Place, London SE8 3FE (Cadiz).

We understand that your client was previously in a personal relationship with Keith Levine and has some form of dispute with him. This dispute, whatever it may be has no relationship whatsoever with Cadiz or this recording. We have received communication from Keith Levine refuting her claim. This is part of his statement.

"My name is Julian Keith Levene. In 2014 the artist Jah Wobble and myself created the music for the works "A Very British Coup consisting" of 3 separate titles of the same name. Any material performed on any versions or releases were 100% signed off to Jah Wobble at the time and nobody else. This is and was the understanding I had with Jah Wobble and can see no reason why anyone else can make any claims toward intellectual property on any release or stream or sync regarding the works "A Very British Coup. If any further information or confirmation is need don't hesitate to email famusgorg@gmail.com or call/text me on 07454736493."

Julian Keith Levene

For the avoidance of doubt Keith Levine has assigned his rights in the recording to Wobble and Youth for perpertuity and in totality.
Furthermore, we cannot see a resemblance between the guitar part on a "A Very British Coup" with the track "I was a Teenage Guitarist 4 The Clash" as your client claims.

It has also come to our attention that your client is now interfering with our legal business with attempts to stop promotion of "A Very British Coup" and with various takedown notices to download companies.

Your client needs to stop this action immediately. In the event that your client does not, please be aware that we will robustly and vigorously protect our recording and right to exploit it.

Yours faithfully

Richard England
Cadiz Music & Digital Ltd

**From:** Alberto E. Lugo-Janer, Esq. [mailto:alugo-janer@cplspa.com]
**Sent:** 02 September 2019 23:19
**To:** 'richard@cadizmusic.co.uk' <richard@cadizmusic.co.uk>
**Subject:** RE: Keith Levene

Dear Mr. England:
This is in follow up to my email correspondences to you of August 28, 29 and 30. My client is hereby permanently withdrawing her authorization to Cadiz Records and to you to use, promote, sell or in any other way be involved in her property. You are to cease and desist from engaging in any further conduct that would suggest the authority conveyed to you by my client arose from anything other than trickery, deception, fraudulent inducement, and/or bad faith. You are to cease and desist from taking any action involving my client's property in order to mitigate the continuing damages that have resulted to my client arising from your illegal conduct. .
You and any representative, designee or employee of Cadiz are also directed to preserve any and all communications between yourself to/from Julian Keith Levene (or any person representing him), John Wardle, Martin Glover, Mark Stewart, and any and all other parties that relate in any way whatsoever to my client, her business relationship and/or property holdings with Mr. Levene including but not limited to the A Very British Coup property.
The record is clear that you have violated your fiduciary obligations owed to my client arising from her entrustment of her property to you. You have breached your agreement with her, and acted in a manner that has benefitted yourself, your company, John Wardle, Martin Glover, Mark Stewart and Keith Levene to my client's detriment. At a minimum my client has claims against you for breach of contract or in the alternative unjust enrichment, breach of fiduciary obligations, trickery, and fraudulent inducement. Other claims are for conspiracy involving yourself and John Wardle and Martin Glover that include but are not limited to interference with my client's property interests and business relationship with Julian Keith Levene.
Your total disregard for your fiduciary and contractual obligations to my client and recognition of my client's interests in her property were most recently revealed in your actions of late August 2019. Consistent with your past conduct demonstrating a lack of communications or good faith on your part, you did not provide my client with the common courtesy to put her on notice of the actual August 28, 2019 pre-release of A Very British Coup or anything related to same including publicity-related activities. There is no question a reasonable person sitting in your shoes would know my client would have been interested in learning this critical fact based on my many communications to you inquiring on status reports as to actions and/or developments involving A Very British Coup.
As has happened time and time again, my client was required to learn through third sources what you were doing with her property. I wrote to you on August 28, 2019, a time when Cadiz and Mr. Wardle were aggressively promoting the sale of A Very British Coup, to express specific concerns that my client had, to which I received no response from you. This combined with additional troubling facts concerning your management of my client's property rights that came to my client's attention necessitated a stronger follow-up communication on August 29, 2019 advising that my client intended to withdraw her authorization to you concerning her property rights if I did not hear back from you. Only then did I receive a reply in which you did not substantively reply to the matters that were contained within my correspondences of August 28-29, 2019 or do anything to relieve her concerns. You stated you were on holiday and would respond after you returned from your holiday. My client doubts you would have responded to similar concerns posed by Mr. Glover or Mr. Wardle in such a flippant and offensive way.
I wrote to you on August 30, 2019 directing you to stop selling and promoting my client's work until further notice and until many problems that had arisen might be rectified. The evidence revealed you have disregarded that directive to date.
The following are facts that will be addressed in future litigation against you alone and in conjunction with Mr. Glover, Mr. Wardle and Mr. Stewart:.
1. By late August 2019, Cadiz and Mr. Wardle began aggressively promoting the pre-sale release of A Very British Coup on vinyl. None of the publicity related to this pre-sale mentioned my client's interests or that Mr. Levene's appearance was courtesy of I Was a Teenage Guitarist for the Clash. It was however extremely favorable to Mr. Wardle, who as you are well aware, was involved in a prior release of this music on the Youth Sounds label without my client's consent. Cadiz's publicity of A Very British Coup went so far as to promote a forthcoming release by Mr. Wardle. The lack of any mention by Cadiz of my client and/or her property rights greatly operated to Mr. Wardle's benefit and to my client's detriment as Mr. Wardle previously used my client's work on A Very British Coup without her authorization. A reasonable person reading this publicity would

more likely than not conclude there was no merit to the prior disputed and unauthorized release of A Very British Coup on the Youth Sounds label including as it related Mr. Wardle's involvement.

2. On information and belief, Mr. Wardle has yielded significant control over you concerning at a minimum the marketing and public relations strategy associated with A Very British Coup.

3. Sometime in approximately late August 2019, Cadiz devoted a section of its website to the A Very British Coup release, and has accepted pre-sale payments for the vinyl edition of this release on its website for this vinyl release.

4. It is my client's understanding, Cadiz has/is also received monetary remuneration arising from the digital release of "A Very British Coup" from July 2019 to date. Nonetheless, you have provided my client with no accounting of any current or past sales or current monies received by Cadiz arising from the sale of A Very British Coup which as part of her agreement with you to entrust you with her property, she is to receive a percentage.

5. You have not provided my client with an estimate of actual costs involved in the sale and promotion of this project which will directly impact any royalties she receives, if ever. You have also not provided my client with any information concerning the promotion, marketing, public relations, forecasted sales, management strategy or anything else concerning activities related to your entrustment of her property.

6. These and other actions appear to demonstrate a purposeful intent to continue to keep my client in the dark as to activities arising from your entrustment of her property as does the fact that you have never initiated a communication advising her of anything related to Cadiz's release of A Very British Coup.

7. Indeed, the only information my client has ever received from you came in the form of responses to my correspondences to you, most of which provided only scant information. Many times, you did not provide timely responses to my initial inquiries which then necessitated follow-ups from me to you asking for a response and it was only then that she learned for example that there were delays in activities related to her property based on prior information provided by you to me.

8. In the meantime, your entrustment of my client's property has greatly benefited John Wardle, Martin Glover, Mark Stewart and yourself in terms of publicity involving A Very British Coup, and the repairing of Mr. Wardle, Mr. Glover's and Mr. Stewart's reputations arising from the prior takedown of the unauthorized use of my client's work on Youth Sounds. Your decision to ensure that Youth Sounds involvement in the Cadiz release was mentioned in publicity for and the sale of the product yielded even more benefits to Mr. Glover in light of the prior unauthorized release of my client's property.

9. You have also benefited from monies received from the sales of A Very British Coup. The publicity A Very British Coup has received has also possibly boost sales of other of Mr. Wardle, Mr. Glover, Mr. Stewart and your own projects. Furthermore, you have taken absolutely no steps to ensure my client benefit at all arising from your entrustment of her property by either including her name on any publicity or on the information associated with the sale of A Very British Coup on your website or elsewhere or specifically referencing that Mr. Levene's involvement was to be credited to I Was a Teenage Guitarist 4 the Clash, per your written obligations to my client.

10. You either directly or indirectly have engaged in authorized conduct by overstepping your authority, the extent to which is unknown arising from your failure to keep my client apprised of matters involving A Very British Coup, and allowing A Very British Coup to appear on at least one other label that my client is aware of and also to be used in publicity to promote the sale of a forthcoming John Wardle compilation album despite the fact you never requested my client's authority for either.

11. You have negligently or intentionally interfered with my client's business relationship and property rights involving Keith Levene when you were well aware that she had an interest in it. (See your email correspondence of April 16, 2019 to my client wherein you state "I have been made aware that you have an interest in Keith Levene's career / copyright" and my responses which included the contract between my client and Mr. Levene revealing his minority rights interests to her majority interests).

12. My client understands that Mr. Levene may have been involved at a minimum in a video shoot for A Very British Coup organized and coordinated on your behalf. If so, you have failed to keep her apprised of your direct or indirect communications with Mr. Levene or that you intended that Mr. Levene would be involved in anything arising from my client's entrusting you with her interests in her own property. Moreover your decision to continue to credit Mr. Levene only and not crediting my client or that Mr. Levene's appearance was courtesy of I Was a Teenage Guitarist for the Clash serves as further evidence of your interference with my client's business relationship with Mr. Levene and/or her property interests arising from same.

13. When you were asked to provide proof that you had or intended to publicly credit my client in any way as late as August 29, 2019, you were unable to do so.

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**



**CPLS, P.A.**

Attorneys |
Mediators
Executive
Consultants

alugo-janer@cplspa.com | www.cplspa.com
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396
This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

**From:** Richard England [mailto:richard@cadizmusic.co.uk]
**Sent:** Monday, September 2, 2019 12:48 PM
**To:** Alberto E. Lugo-Janer, Esq.
**Subject:** FW: Keith Levene

Hi Alberto

Response to your letter below.

Best wishes RE

---------- Forwarded message ---------
From: **Alberto E. Lugo-Janer, Esq.** <alugo-janer@cplspa.com>
Date: Fri, Aug 30, 2019 at 1:26 PM
Subject: RE: Keith Levene
To: Richard England <richardecadiz@gmail.com>

Dear Mr. England:

This is to express my deep concerns as to Cadiz's treatment of my client and her property.

Cadiz owes my client certain contractual and fiduciary obligations in return for her authorization to allow Cadiz to use her property. Bad faith has been exhibited by Cadiz toward my client. In response to my requests for information from you in my most recent inquiries of August 28 and 29, 2019, you indicated you would be back in touch next week. **In the interim, and based on ongoing problems and until these problems can be properly rectified, Cadiz is directed to cease the use of, promotion, sale and/or distribution of my client's property until further notice.** I base this directive on the following:

1) In April 2019 you contacted my client to make inquires about her interest in music involving work with Julian Keith Levene, work that had been previously released on another label without her authorization.

2) Thereafter you and I began a several months long dialogue which resulted in my client's authorizing **Cadiz Records** to release her property on (1) a vinyl album called **A Very British Coup** which you advised would be released August 30, 2019 and (2) followed by a three tune download EP called **A Very British Coup.** I was clear in my past communications that my client's authorization did not extend to any third party. Furthermore, you did not seek nor did my client extend permission for further usage of her property.

3) As consideration by Cadiz for the use of my client's work, she asked you for and you agreed to: 1) Properly credit her and 2) pay her 51% royalties, the latter of which she may or may not ever receive as all costs will undoubtedly need to be accounted for before she receives any compensation. Thus the only consideration she asked Cadiz for that you could provide at the time of her agreement to use her work was to simply credit her. There is no evidence that this has ever been performed by you. This is not acceptable.

4) At no time has Cadiz kept my client affirmatively apprised of what was transpiring with her work. It was

only after I contacted you, and sometimes my communications required follow-ups before you ever responded, that you provide her with any information at all. Indeed much of what has been learned regarding what Cadiz may or may not be doing with her work has come from other sources. This is not acceptable.

5) Recently concerns were raised about further unauthorized use of my client's property: A) See for example the attached Sound Cloud screen shot showing release of A Very British Coup on an unknown label "Painted Word Records" and B) A Very British Coup is being promoted and will be offered for sale in October 2019 on a John Wardle compilation album entitled "Post Punk Apocalyptic Dub." It appears Cadiz has been involved directly and/or indirectly in promoting both, including on its social media. This is not acceptable.

6) You have not provided any proof that you have performed your end of the bargain by crediting my client. When I asked you for this proof twice, something that one would think would be at your disposal, you were unable to immediately produce it and stated you would be in touch next week.

7) Furthermore, my client's name is nowhere to be found on any marketing materials for A Very British Coup.

8) Meantime, Cadiz has now begun offering up the vinyl record for sale.

The aforementioned conduct on Cadiz's part will no longer be tolerated.

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com** | **www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

**CPLS, P.A.**

Attorneys |
Mediators
Executive
Consultants

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

**From:** Richard England [mailto:richardecadiz@gmail.com]
**Sent:** Thursday, August 29, 2019 3:18 PM
**To:** Alberto E. Lugo-Janer, Esq.
**Subject:** Re: Keith Levene

I am holiday will come back to you on Monday 2nd September. RE

On Thu, 29 Aug 2019, 16:20 Alberto E. Lugo-Janer, Esq., <alugo-janer@cplspa.com> wrote:

> SECOND and FINAL REQUEST
>
> Dear Mr. England:
>
> This correspondence follows my email to you of August 28, 2019 to which I have received no response. It has come to my attention that various outlets are reporting A Very British Coup is being released on a compilation album; see: https://www.theransomnote.com/music/news/jah-wobble-releases-anti-brexit-single-titled-a-very-british-coup/. My client did not authorize this release as a part of a compilation by Cadiz or Mr. Wardle entitled "Post Punk Apocalypse Dub."
>
> Please respond within 24 hours with proof that my client will be credited on the release entitled A Very British Coup which you previously advised would be released on vinyl August 30, 2019 and as a download in September.
>
> Failure to respond within 24 hours will result in an immediate and irrevocable and permanent withdrawal of

my client's authorization to Cadiz.

Very truly yours.

**CPLS, P.A.**

Attorneys |
Mediators
Executive
Consultants

**Error!
Filename not
specified.
Error!
Filename not
specified.
Error!
Filename not
specified.
Error!
Filename not
specified.
Error!
Filename not
specified.**

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

**From:** Alberto E. Lugo-Janer, Esq.
**Sent:** Wednesday, August 28, 2019 2:36 PM
**To:** 'richard@cadizmusic.co.uk'
**Subject:** RE: Keith Levene

Dear Mr. England:

I trust that this email finds you doing well. I am following up on our conversations concerning the vinyl and download of the 3 tune A Very British Coup release on Cadiz. Please provide me with proof that my client's name will be properly listed per our agreement.

Also it is my understanding that this music may appear on a separate Jah Wobble compilation record which we never discussed and if true would be outside of the scope of her agreement and without my client's authorization.

I look forward to hearing back from you.

**CPLS, P.A.**

Attorneys |
Mediators

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

Executive
Consultants

**Error!**
**Filename not**
**specified.**
**Error!**
**Filename not**
**specified.**
**Error!**
**Filename not**
**specified.**
**Error!**
**Filename not**
**specified.**
**Error!**
**Filename not**
**specified.**

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

---

**From:** Richard England [mailto:richard@cadizmusic.co.uk]
**Sent:** Thursday, July 25, 2019 9:23 AM
**To:** Alberto E. Lugo-Janer, Esq.
**Subject:** RE: Keith Levene

Answers below…..

---

**From:** Alberto E. Lugo-Janer, Esq. [mailto:alugo-janer@cplspa.com]
**Sent:** 25 July 2019 12:59
**To:** 'richard@cadizmusic.co.uk'
**Subject:** RE: Keith Levene

SECOND REQUEST

Dear Mr. England:

Following up on my below email to you of July 22, 2019, to which I have yet to receive an acknowledgment.

Additionally, as a reminder: My client's grant of authority does not extend to any third party including but not limited to Youth Sounds or any other label associated with Martin Glover a/k/a Youth.

My client has exclusively granted her authority to Cadiz Music and yourself pursuant to our prior communications. Please provide the courtesy of a response to my July 22, 2019, email by end of business July 29, 2019.

Thank you.

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

**CPLS, P.A.**
Attorneys |
Mediators |
Executive
Consultants

**Error! Filename not specified.Error! Filename not specified.Error! Filename not specified.Error! Filename not specified.Error! Filename not specified.Error! Filename not specified.** This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

---

**From:** Alberto E. Lugo-Janer, Esq.
**Sent:** Monday, July 22, 2019 5:45 PM
**To:** 'richard@cadizmusic.co.uk'
**Subject:** RE: Keith Levene

Dear Mr. England:

In follow-up to your email of June 21, 2019, below, I am at this time requesting an update as to certain matters contained therein, namely:

(1) How the video shoot for "A Very British Coup" transpired; Not taken place yet, sometime in August.
(2) Regarding the physical product, is everything progressing according to plan to meet the respective August and September release dates; 12 inch in manufacture will be release in September, Album in October.
(3) Is the digital album on target for a September release? October

I look forward to hearing back from you.


**CPLS, P.A.**
Attorneys | Mediators
Executive Consultants

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

**Error! Filename not specified.Error! Filename not specified.Error! Filename not specified.Error! Filename not specified.Error! Filename not specified.Error! Filename not specified.** This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

---

**From:** Alberto E. Lugo-Janer, Esq.

**Sent:** Friday, June 28, 2019 7:44 AM
**To:** 'richard@cadizmusic.co.uk'
**Subject:** RE: Keith Levene

Dear Mr. England:

This is to re-confirm receipt of your assurances that the credits will appear as per below and that, therefore, we have reached an agreement as to this matter.

Should any issues arise with any third parties regarding prior complaints or concerns, please feel free to provide them with my contact information. I will confirm that I have, on behalf of my client, together with you and Cadiz, reached an agreement. Thank you.

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

**CPLS, P.A.**
Attorneys |
Mediators
Executive
Consultants

**Error!
Filename not
specified.Error!
Filename not
specified.Error!
Filename not
specified.Error!
Filename not
specified.Error!
Filename not
specified.**

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

---

**From:** Alberto E. Lugo-Janer, Esq.
**Sent:** Thursday, June 27, 2019 11:58 AM
**To:** 'richard@cadizmusic.co.uk'
**Subject:** RE: Keith Levene

Thank you.

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

**CPLS, P.A.**
Attorneys |
Mediators
Executive
Consultants

**Error!
Filename not
specified.Error!
Filename not**

**specified.Error!**
**Filename not**
**specified.Error!**
**Filename not**
**specified.Error!**
**Filename not**
**specified.**

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

**From:** Richard England [mailto:richard@cadizmusic.co.uk]
**Sent:** Thursday, June 27, 2019 9:08 AM
**To:** Alberto E. Lugo-Janer, Esq.
**Subject:** RE: Keith Levene

I will add your additions. RE

**From:** Alberto E. Lugo-Janer, Esq. [mailto:alugo-janer@cplspa.com]
**Sent:** 26 June 2019 19:06
**To:** 'richard@cadizmusic.co.uk'
**Subject:** RE: Keith Levene

Dear Mr. England:

My additions to the credits appear in bold.

Please confirm these additions will be added to the official credits.


01 - A Very British Coup ft Mark Stewart
Written by John Wardle, Mark Stewart, Charlie Wardle, Keith Levene, Kathy DiTondo, Martin Glover, and Richard Dudanski.
Mark Stewart - Vocals, Jah Wobble - Bass, Youth - Bass/Keyboards, Richard Dudanski - Drums, Keith Levene - Guitar, Andrew Weatherall and Nina Walsh - Loops, Charlie Wardle - Chinese Harp. Produced by Youth. Engineered, mixed, and mastered by Michael Rendall. **Keith Levene/Kathy DiTondo courtesy of (c) I Was a Teenage Guitarist 4 the Clash.**

02 - A Very British Coup ft Mark Stewart [Radio Edit]
Written by John Wardle, Mark Stewart, Charlie Wardle, Keith Levene, Kathy DiTondo, Martin Glover, and Richard Dudanski.
Mark Stewart - Vocals, Jah Wobble - Bass, Youth - Bass/Keyboards, Richard Dudanski - Drums, Keith Levene - Guitar, Andrew Weatherall and Nina Walsh - Loops, Charlie Wardle - Chinese Harp. Produced by Youth. Engineered, mixed, and mastered by Michael Rendall. **Keith Levene/Kathy DiTondo courtesy of (c) I Was a Teenage Guitarist 4 the Clash.**

03 - A Very British Coup [Dogma]
Written by John Wardle, Andrew Weatherall, Martin Glover, and Mark Stewart
Jah Wobble - Bass, Youth - Bass/Keyboards, Richard Dudanski - Drums, Andrew Weatherall and Nina Walsh - Loops. Produced by Youth. Engineered, mixed, and mastered by Michael Rendall.

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

**CPLS, P.A.**
Attorneys |
Mediators
Executive
Consultants

**Error! Filename not specified.Error! Filename not specified.Error! Filename not specified.Error! Filename not specified.Error! Filename not specified.Error! Filename not specified.** This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

**From:** Richard England [mailto:richard@cadizmusic.co.uk]
**Sent:** Wednesday, June 26, 2019 9:19 AM
**To:** Alberto E. Lugo-Janer, Esq.
**Subject:** RE: Keith Levene

Hi Alberto

Here are the credits.

01 - A Very British Coup ft Mark Stewart
Written by John Wardle, Mark Stewart, Charlie Wardle, Keith Levene, Kathy DiTondo, Martin Glover, and Richard Dudanski.
Mark Stewart - Vocals, Jah Wobble - Bass, Youth - Bass/Keyboards, Richard Dudanski - Drums, Keith Levene - Guitar, Andrew Weatherall and Nina Walsh - Loops, Charlie Wardle - Chinese Harp. Produced by Youth. Engineered, mixed, and mastered by Michael Rendall.

02 - A Very British Coup ft Mark Stewart [Radio Edit]
Written by John Wardle, Mark Stewart, Charlie Wardle, Keith Levene, Kathy DiTondo, Martin Glover, and Richard Dudanski.
Mark Stewart - Vocals, Jah Wobble - Bass, Youth - Bass/Keyboards, Richard Dudanski - Drums, Keith Levene - Guitar, Andrew Weatherall and Nina Walsh - Loops, Charlie Wardle - Chinese Harp. Produced by Youth. Engineered, mixed, and mastered by Michael Rendall.

03 - A Very British Coup [Dogma]
Written by John Wardle, Andrew Weatherall, Martin Glover, and Mark Stewart
Jah Wobble - Bass, Youth - Bass/Keyboards, Richard Dudanski - Drums, Andrew Weatherall and Nina Walsh - Loops. Produced by Youth. Engineered, mixed, and mastered by Michael Rendall.


We supply these to everyone we supply the music to. It is not generally displayed on sites or to the generally public, but is registered so the copyright is acknowledged and protected.

Best wishes RE

**From:** Alberto E. Lugo-Janer, Esq. [mailto:alugo-janer@cplspa.com]
**Sent:** 26 June 2019 13:28
**To:** 'richard@cadizmusic.co.uk' <richard@cadizmusic.co.uk>
**Subject:** RE: Keith Levene

Dear Mr. England:

Please be reminded that my client did not demand an advance, sign on bonus or any other consideration, nor did you offer one. Although she did demand royalties, she understands how the process works; that costs

will need to be accounted for before she ever receives a royalty. She merely required that you properly credit her and acknowledge her copyright and you agreed in writing to do it. I continued in our communications over the past 2.5 months to remind you of the way the credit was to appear.

The product details section of ITunes and Amazon is where she should have been credited but was not (see attached). For instance, as her work incorporated within A Very British Coup was protected by copyright prior to the date A Very British Coup existed, it should have been referenced under the copyright section or somewhere within the advertisement for the releases. There is no mention of credit or her copyright anywhere in the presale promotion for A Very British Coup on Amazon or ITunes.

You do not have authorization to release my client's music without proper credit to her and acknowledgement of her copyright. This is a non-negotiable issue.

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

**CPLS, P.A.**
Attorneys |
Mediators
Executive
Consultants

**Error!**
**Filename not**
**specified.Error!**
**Filename not**
**specified.Error!**
**Filename not**
**specified.Error!**
**Filename not**
**specified.Error!**
**Filename not**
**specified.**

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

**From:** Richard England [mailto:richard@cadizmusic.co.uk]
**Sent:** Wednesday, June 26, 2019 4:38 AM
**To:** Alberto E. Lugo-Janer, Esq.
**Subject:** RE: Keith Levene

Hello Alberto,

I don't understand this request for crediting your client on iTunes or the BBC?

Only the performers are going to be mentioned by the media, not the songwriters.

Best wishes RE

**From:** Alberto E. Lugo-Janer, Esq. [mailto:alugo-janer@cplspa.com]
**Sent:** 25 June 2019 18:30
**To:** 'richard@cadizmusic.co.uk' <richard@cadizmusic.co.uk>
**Subject:** RE: Keith Levene

Dear Mr. England:

This is in follow-up to my email of June 24, 2019 concerning your failure to credit my client to which you have not acknowledged or responded. Crediting my client as you agreed to in writing in your attached email and are obligated to is a non-negotiable manner.

Please reply within 24 hours and advise how the issues addressed in my email of June 24, 2019 will be rectified.

Thereafter the appropriate next step to address your failure to credit my client as you ensured you would will be taken.

**CPLS, P.A.**

Attorneys | Mediators Executive Consultants

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

**Error! Filename not specified.Error! Filename not specified.Error! Filename not specified.Error! Filename not specified.Error! Filename not specified.**

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

---

**From:** Alberto E. Lugo-Janer, Esq.
**Sent:** Monday, June 24, 2019 12:17 PM
**To:** 'richard@cadizmusic.co.uk'
**Subject:** RE: Keith Levene

Dear Mr. England:

Thank you for your correspondence of June 21, 2019. The schedule outlined in same is acceptable including release of the download on July 5, 2019 in lieu of July 4, 2019 or prior.

What I am deeply concerned about is there is no mention of my client's contributions in any of the pre-release notifications to the market that I have seen thus far, not even as a linear note i.e..
https://music.apple.com/gb/album/very-british-coup-youth-meets-jah-wobble-feat-mark/1468915159
https://www.amazon.com/Very-British-Coup-Dogma-Mix/dp/B07TBHD9CH/ref=sr_1_1?
keywords=a+very+british+coup+wobble&qid=1561376296&s=gateway&sr=8-1 . .

I also understand the music has been played on the BBC this weekend and my client's contributions there are also non-existent. https://www.bbc.co.uk/music/artists/904cc1c8-021e-45ac-bbe9-95c01a1f8099

**Re-releasing the music and publicly attributing it again only to those involved with the prior (unauthorized) Youth Sounds release without any credit to my client at all is not acceptable and not consistent with our agreed-to terms.**

As a reminder, the current terms are:
**1 Credit: Kathy DiTondo/Keith Levene/(c) I Was a Teenage Guitarist For the Clash!**
2. Royalties 51% my client 49% Mr. Levene.
Please advise. Thank you.


**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com** | **www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

**CPLS, P.A.**
Attorneys |
Mediators
Executive
Consultants

**Error!
Filename not
specified.Error!
Filename not
specified.Error!
Filename not
specified.Error!
Filename not
specified.Error!
Filename not
specified.**

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

---

**From:** Richard England [mailto:richard@cadizmusic.co.uk]
**Sent:** Friday, June 21, 2019 6:57 AM
**To:** Alberto E. Lugo-Janer, Esq.
**Cc:** 'Kathy D. 2014'
**Subject:** RE: Keith Levene

Hello Alberto

We have re-submitted the single to all the download companies. The digital release date is now 5th July. As there was a forced takedown, it takes longer for the download companies to put the track back up. This actually one day later than your stipulated date of 5th July, but I trust this is acceptable to you and your client.

We are shooting a video for the single in the next week and employing a press and promotion agency "Some Friendly" .

We are preparing the parts for the 12inch vinyl version of the single. That will be out mid / late August.

The album on which the track appears will be released digitally and on vinyl / CD in late September.

Best wishes RE

---

**From:** Alberto E. Lugo-Janer, Esq. [mailto:alugo-janer@cplspa.com]

**Sent:** 19 June 2019 00:26
**To:** 'richard@cadizmusic.co.uk'
**Cc:** 'Kathy D. 2014'
**Subject:** RE: Keith Levene

Dear Mr. England:

Thank you for your email of June 10, 2019 advising A Very British Coup should be available digitally within a few days. To date, I have not been able to locate it through any download service providers including Apple, I Tunes, Amazon, and Spotify.

In the event it has not been released as of yet, my client is willing to extend her full authorization to Cadiz based on terms set forth in my email to you of April 16, 2019 until July 3, 2019.

Should the digital version of A Very British Coup remain unavailable through normal DSP channels as of July 4, 2019, my client's terms previously conveyed will automatically expire. Any requests for Ms. Bonczyk's authorization effective July 4, 2019 will require additional terms to include an advance on royalties.

As a reminder, the current terms are:

1 Credit: Kathy DiTondo/Keith Levene/(c) I Was a Teenage Guitarist For the Clash!
2. Royalties 51% my client 49% Mr. Levene.

Respectfully,

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

**C P L S , P . A .**

Attorneys |
Mediators
Executive
Consultants

**Error!
Filename not
specified.Error!
Filename not
specified.Error!
Filename not
specified.Error!
Filename not
specified.Error!
Filename not
specified.**

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

**From:** Richard England [mailto:richard@cadizmusic.co.uk]
**Sent:** Monday, June 10, 2019 6:25 AM
**To:** Alberto E. Lugo-Janer, Esq.
**Cc:** 'Kathy D. 2014'
**Subject:** RE: Keith Levene

Hi Alberto

The track should be available digitally in the next few days.

Best wishes RE

---

**From:** Alberto E. Lugo-Janer, Esq. [mailto:alugo-janer@cplspa.com]
**Sent:** 06 June 2019 16:27
**To:** 'richard@cadizmusic.co.uk'
**Cc:** 'Kathy D. 2014'
**Subject:** RE: Keith Levene

Dear Mr. England:

With news of the widespread protests from England this week and Prime Minister May scheduled to leave office tomorrow, I am writing to obtain an update as to where matters stand concerning Cadiz's release of "A Very British Coup."

During our email exchanges of two weeks ago, it was my understanding from you that Cadiz was going to rush the release. I would appreciate it if you would advise when the music is scheduled to be released and where it will be made available for sale. Thank you.

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
alugo-janer@cplspa.com | www.cplspa.com
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

**C P L S ,  P. A.**
Attorneys |
Mediators
Executive
Consultants

**Error! Filename not specified.Error! Filename not specified.Error! Filename not specified.Error! Filename not specified.Error! Filename not specified.Error! Filename not specified.** This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

---

**From:** Alberto E. Lugo-Janer, Esq.
**Sent:** Friday, May 24, 2019 1:58 PM
**To:** 'richard@cadizmusic.co.uk'
**Cc:** 'Kathy D. 2014'
**Subject:** RE: Keith Levene

Thank You!

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
alugo-janer@cplspa.com | www.cplspa.com
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

**C P L S ,  P. A.**

[Attorneys |
Mediators
Executive
Consultants](#)

**[Error!
Filename not
specified.Error!
Filename not
specified.](#)**

---

Virus-free. [www.avast.com](http://www.avast.com)

---

Virus-free. [www.avast.com](http://www.avast.com)

| | |
|---|---|
| **From:** | Alberto E. Lugo-Janer, Esq. |
| **To:** | Nathalia C. Rocha |
| **Subject:** | FW: Keith Levene |
| **Date:** | Thursday, September 12, 2019 2:14:50 PM |
| **Attachments:** | image001.png |



**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
alugo-janer@cplspa.com | www.cplspa.com
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

Attorneys | Mediators
Executive Consultants

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

---

**From:** Alberto E. Lugo-Janer, Esq.
**Sent:** Friday, May 24, 2019 1:58 PM
**To:** 'richard@cadizmusic.co.uk'
**Cc:** 'Kathy D. 2014'
**Subject:** RE: Keith Levene

Thank You!

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
alugo-janer@cplspa.com | www.cplspa.com
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

Attorneys | Mediators
Executive Consultants

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

---

**From:** Richard England [mailto:richard@cadizmusic.co.uk]
**Sent:** Friday, May 24, 2019 10:41 AM
**To:** Alberto E. Lugo-Janer, Esq.
**Cc:** 'Kathy D. 2014'
**Subject:** RE: Keith Levene

Hi Alberto

I agree, we will get on the case and rush release.

Best wishes RE

**From:** Alberto E. Lugo-Janer, Esq. [mailto:alugo-janer@cplspa.com]
**Sent:** 24 May 2019 14:20
**To:** 'richard@cadizmusic.co.uk'
**Cc:** 'Kathy D. 2014'
**Subject:** RE: Keith Levene

Dear Mr. England:

Thank you for your response.

As stated, my client previously authorized you and no other entity or individual to release this music on behalf of herself and the minority holder in interest, Mr. Levene. Based on her understanding, a release was imminent.

In light of the subject matter of A Very British Coup, this morning's unexpected resignation of Prime Minister May, and the recent launch party (see link https://richmix.org.uk/events/rdf-vs-youth-jah-wobble-and-mark-stewart/), she believes it is in her and Mr. Levene's best interests and probably all other parties in interest to release this tune **now** not in September or later in the year.

Please advise.



**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

Attorneys | Mediators
Executive Consultants

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

**From:** Richard England [mailto:richard@cadizmusic.co.uk]
**Sent:** Friday, May 24, 2019 8:01 AM
**To:** Alberto E. Lugo-Janer, Esq.
**Cc:** 'Kathy D. 2014'
**Subject:** RE: Keith Levene

Hi Alberto

We are looking to release the album "Post Punk Dub Apocalypse" in September. The album features "A Very British Coup".

I was not at the Rich Mix and not aware that Youth was thinking of releasing the track on Youth Sounds. I will have to check with him.

Will be back to you.

Best wishes RE

**From:** Alberto E. Lugo-Janer, Esq. [mailto:alugo-janer@cplspa.com]
**Sent:** 22 May 2019 18:34
**To:** 'richard@cadizmusic.co.uk' <richard@cadizmusic.co.uk>
**Cc:** 'Kathy D. 2014' <kathy197778@gmail.com>
**Subject:** RE: Keith Levene

Dear Mr. England:

I am quite frankly a bit confused and would appreciate clarification to the contents of your email of May 22, 2019, as when you first contacted my client some six weeks ago you indicated Cadiz was about to release A Very British Coup on behalf of the producer/musician Youth/Martin Glover. Furthermore, it appears three of the principal parties involved with the A Very British Coup production have been actively promoting this music after we began communicating.

For instance: I understand Mr. Glover, Mr. Wardle and Mr. Stewart have all promoted the Youth Sounds-issued version of A Very British Coup Mr. Glover released March 29, 2019 without my client's input or consent on their social media accounts of late, and furthermore all three were involved in a live event/launch of A Very British Coup on May 10, 2019 at a venue called Rich Mix. It is my further understanding that following that event Mr. Glover publicly announced A Very British Coup would be re-released on the "Youth Sounds" label later in the year.

My client's authorization set forth in my email correspondence of April 16, 2019 was extended to Cadiz and not any other entity based on our prior communications and on the grounds that she understood a release on Cadiz was imminent.

In light of the foregoing, I would appreciate confirmation as to whether plans to release A Very British Coup on Cadiz have now been effectively cancelled.



**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

**From:** Richard England [mailto:richard@cadizmusic.co.uk]
**Sent:** Wednesday, May 22, 2019 5:07 AM
**To:** Alberto E. Lugo-Janer, Esq.
**Cc:** 'Kathy D. 2014'
**Subject:** RE: Keith Levene

Hello Alberto

Not much progress over here at the moment. Everyone is busy doing other stuff.

Will keep you posted as and when there is some movement on this project.

Best wishes RE

**From:** Alberto E. Lugo-Janer, Esq. [mailto:alugo-janer@cplspa.com]
**Sent:** 21 May 2019 18:18
**To:** 'richard@cadizmusic.co.uk' <richard@cadizmusic.co.uk>
**Cc:** 'Kathy D. 2014' <kathy197778@gmail.com>
**Subject:** RE: Keith Levene

Dear Mr. England:

Good day.

Kindly provide an update as to where matters stand concerning the release of A Very British Coup.

Very truly yours,

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**



201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

Attorneys | Mediators
Executive Consultants

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

**From:** Alberto E. Lugo-Janer, Esq.
**Sent:** Tuesday, April 16, 2019 1:24 PM
**To:** 'richard@cadizmusic.co.uk'
**Cc:** 'Kathy D. 2014'
**Subject:** RE: Keith Levene

Dear Mr. England:

It is Ms. Bonczyk's understanding that Mr. Levene's writing credit is on the Youth/Jah Wobble production "A Very British Coup." Here Mr. Levene's guitar work modifies the use of the property "I Was a Teenage Guitarist 4 the Clash." Credits should read Kathy DiTondo/Keith Levene/(c) I Was a Teenage Guitarist 4 the Clash.

The parties written agreement, which is attached hereto, covers any modifications to hers/their property, in this case "I Was a Teenage Guitarist 4 the Clash." The contract also identifies Ms. Bonczyk as majority decision-maker/holder in interest, and establishes a financial split of 51% in her favor to Mr. Levene's 49%.

If Mr. Levene's contributions involve other works please advise. Thank you.

https://www.youtube.com/watch?v=YBKw6Vwv1hY



**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
alugo-janer@cplspa.com | www.cplspa.com
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

Attorneys | Mediators
Executive Consultants

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

**From:** Richard England [mailto:richard@cadizmusic.co.uk]
**Sent:** Tuesday, April 16, 2019 12:02 PM
**To:** Alberto E. Lugo-Janer, Esq.
**Cc:** 'Kathy D. 2014'
**Subject:** RE: Keith Levene

Hi Alberto

Keith Levene is playing guitar on three tracks on the album. The songs were written by Youth and Jah Wobble except one song where Keith has a minor song writing contribution.

Best wishes RE

**From:** Alberto E. Lugo-Janer, Esq. [mailto:alugo-janer@cplspa.com]

**Sent:** 16 April 2019 13:05
**To:** 'richard@cadizmusic.co.uk'
**Cc:** 'Kathy D. 2014'
**Subject:** FW: Keith Levene

Dear Mr. England:

I represent the interests of Kathleen M. Bonczyk. Please direct all further inquiries to my attention.

By way of background: Ms. Bonczyk originally met Mr. Levene in 2011 and thereafter developed, created and financed a number of properties including but not limited to a substantial amount of music involving Mr. Levene.

It is difficult to respond to your inquiry without having a better understanding of Mr. Levene's contributions to the album you are describing. I would appreciate it if you could clarify same. Thank you.



**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

Attorneys | Mediators
Executive Consultants

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

---------- Forwarded message ----------
From: **Richard England** <richard@cadizmusic.co.uk>
Date: Tuesday, April 16, 2019
Subject: Keith Levene
To: kathy197778@gmail.com

Dear Katherine M Bonczyk

I am about to release an album by Youth and Jah Wobble which features Keith Levene on guitar on several tracks. This album will be released on Cadiz Music.

I have been made aware that you have an interest in Keith Levene's career / copyright. Please can you clarify your position and any restrictions you may have on him appearing on the record.

Thank you.

Best wishes

Richard England
Cadiz Music & Digital Ltd

---

This email has been checked for viruses by Avast antivirus software.

[www.avast.com](www.avast.com)

---

This email has been checked for viruses by Avast antivirus software.
[www.avast.com](www.avast.com)

| | |
|---|---|
| **From:** | Alberto E. Lugo-Janer, Esq. |
| **To:** | Nathalia C. Rocha |
| **Subject:** | FW: Keith Levene |
| **Date:** | Thursday, September 12, 2019 3:19:01 PM |
| **Attachments:** | image001.png |



**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396

Attorneys | Mediators
Executive Consultants

This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe that you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

**From:** Richard England [mailto:richard@cadizmusic.co.uk]
**Sent:** Wednesday, April 24, 2019 8:14 AM
**To:** Alberto E. Lugo-Janer, Esq.
**Subject:** RE: Keith Levene

Hi Alberto

With regards to "A Very British Coup", we can credit accordingly. I acknowledge the 51% in favour of Ms Bonczyk on the contribution by Keith Levene to this track. This contribution is 5% to the overall track. We will report sales royalties to your client.

Keith Levene does not have any other song writing credits on the album.

Best wishes


Richard England




**From:** Alberto E. Lugo-Janer, Esq. [mailto:alugo-janer@cplspa.com]
**Sent:** 16 April 2019 18:24
**To:** 'richard@cadizmusic.co.uk'
**Cc:** 'Kathy D. 2014'
**Subject:** RE: Keith Levene

Dear Mr. England:

It is Ms. Bonczyk's understanding that Mr. Levene's writing credit is on the Youth/Jah Wobble production "A Very British Coup." Here Mr. Levene's guitar work modifies the use of the property "I Was a Teenage Guitarist 4 the Clash." Credits should read Kathy DiTondo/Keith Levene/(c) I Was a Teenage Guitarist 4 the Clash.

The parties written agreement, which is attached hereto, covers any modifications to hers/their property, in this case "I Was a Teenage Guitarist 4 the Clash." The contract also identifies Ms. Bonczyk as majority decision-maker/holder in interest, and establishes a financial split of 51% in her favor to Mr. Levene's 49%.

If Mr. Levene's contributions involve other works please advise. Thank you.

https://www.youtube.com/watch?v=YBKw6Vwv1hY

**CPLS, P.A.**

Attorneys |
Mediators
Executive
Consultants

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**
201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396
This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

---

**From:** Richard England [mailto:richard@cadizmusic.co.uk]
**Sent:** Tuesday, April 16, 2019 12:02 PM
**To:** Alberto E. Lugo-Janer, Esq.
**Cc:** 'Kathy D. 2014'
**Subject:** RE: Keith Levene

Hi Alberto

Keith Levene is playing guitar on three tracks on the album. The songs were written by Youth and Jah Wobble except one song where Keith has a minor song writing contribution.

Best wishes RE

---

**From:** Alberto E. Lugo-Janer, Esq. [mailto:alugo-janer@cplspa.com]
**Sent:** 16 April 2019 13:05
**To:** 'richard@cadizmusic.co.uk'
**Cc:** 'Kathy D. 2014'
**Subject:** FW: Keith Levene

Dear Mr. England:

I represent the interests of Kathleen M. Bonczyk. Please direct all further inquiries to my attention.

By way of background: Ms. Bonczyk originally met Mr. Levene in 2011 and thereafter developed, created and financed a number of properties including but not limited to a substantial amount of music involving Mr. Levene.

It is difficult to respond to your inquiry without having a better understanding of Mr. Levene's contributions to the album you are describing. I would appreciate it if you could clarify same. Thank you.

**Alberto E. Lugo-Janer, J.D., LL.M., Senior Litigator**
**alugo-janer@cplspa.com | www.cplspa.com**

**CPLS, P.A.**
Attorneys |
Mediators
Executive
Consultants

201 East Pine Street, Suite 445, Orlando, Florida 32801
Main: 407.647.7887 | Cell: 407.342.3122 | Fax: 407.647.5396
This message and any included attachments are property of CPLS, P.A., and are intended only for the addressee(s). The information contained herein may include attorney-client-privileged or otherwise confidential information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. Please do not copy or forward. If you received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail. Thank you.

---------- Forwarded message ----------
From: **Richard England** <richard@cadizmusic.co.uk>
Date: Tuesday, April 16, 2019
Subject: Keith Levene
To: kathy197778@gmail.com

Dear Katherine M Bonczyk

I am about to release an album by Youth and Jah Wobble which features Keith Levene on guitar on several tracks. This album will be released on Cadiz Music.

I have been made aware that you have an interest in Keith Levene's career / copyright. Please can you clarify your position and any restrictions you may have on him appearing on the record.

Thank you.

Best wishes

Richard England
Cadiz Music & Digital Ltd

This email has been checked for viruses by Avast antivirus software.
www.avast.com

This email has been checked for viruses by Avast antivirus software.
www.avast.com

# Exhibit 3

# HOUSING ACT 1988

Section 21(4)(a)

## Assured Shorthold Tenancy : Notice Requiring Possession: Periodic Tenancy
(Note 1)

(1) Name and address of tenant.

To(¹)  Mr Julian Keith Levene, Mrs Shelly Maria Levene
        (LICENSEE)

of      33 Highbank
        Off Caerleon Road
        Newport
        South Wales
        NP19 7JQ

(2) Name and address of landlord (Note 2 overleaf).

From(²)  Rev. Canon Willie & Mrs Val Willie

of       NEWLAND RENNIE WILKINS
         68 BRIDGE STREET
         NEWPORT
         SOUTH WALES
         NP20 4AQ

(3) Address of dwelling.

I give you notice that I require possession of the dwelling-house known as(³)

        33 Highbank
        Off Caerleon Road
        Newport
        South Wales
        NP19 7JQ

(4) Date of expiry (Note 3 overleaf).

9th November 2012

after(⁴)                                          or, if later, the day on which a
complete period of your tenancy expires next after the end of two months from the service
of this notice

(5) Note 3 overleaf.

Dated(⁵)
        6ᵗʰ September 2012

        Rev. Canon Willie & Mrs Val Willie
Landlord

(6) Name and address.

[Landlord's agent](⁶)  C/O  NEWLAND RENNIE WILKINS
                       68 BRIDGE STREET, NEWPORT, NP20 4AQ

**[P.T.O.**

Exhibit 4

# EVERYMAN

## EVERYMAN CINEMA PRIVATE HIRE CUSTOMER CONTRACT

| Booking Details | |
|---|---|
| **Contract Number** | PH-I-Isl004/0093 |
| **Name of Customer** | Keith Levene C/O Kathleen Bonczyk |
| **Venue & Screening Room** | Screen on the Green - Islington |
| **Number of People** | Please confirm no later than 7 days before the event |
| **Type of Occasion** | London 1976 Festival at Screen on the Green |
| **Date of Booking** | Monday 29th August 2016 |
| **Time** | 6pm – 11pm |
| **Total Duration** | 5 hours |
| **Film Requested** | NA – Providing all content for the evening. |
| **Total Hire Costs:** | £7000.00 including £2500.00 to be spent on food and drink for the event. |

| Event contacts | |
|---|---|
| Kathleen Bonczyk | |
| ▅▅▅▅▅▅▅▅▅▅▅▅ | |
| Keith Levene | |
| ▅▅▅▅▅▅▅▅▅▅▅▅ | |

| Running sheet | |
|---|---|
| Timings and paticulars to be confirmed no later than 7 days before the event. | |
| Short Introduction | |
| Acoustic set | |
| Film (30 to 40 mins) | |
| Q&A Session | |
| Music Set | |

| Food | |
|---|---|
| **Items & Quantities Required**<br><br>*We can supply napkins and glasses - we do not supply plates, disposable cups or a cake knife so please bring these if required.* | The venue will be in touch with you one week before the event date for your food pre-order.<br><br>We recommend a pre order for large parties and if food is required at a specific time for your event. |
| **Hot food to be served before or after the film?** | Please specify |

Gmail - Fwd: Notification of Payment Received

 **Gmail**

Kathy D. 2014 <kathy197778@gmail.com>

---

## Fwd: Notification of Payment Received

3 messages

---

**JkL** <famusgorg@gmail.com>                                      Mon, Dec 21, 2015 at 3:10 PM
To: theinstitute1976@gmail.com
Cc: Kathy D <kathy197778@gmail.com>

    1st Screen pass.

    K

    ---------- Forwarded message ----------
    From: **daniel prince via PayPal** <member@paypal.co.uk>
    Date: Mon, Dec 21, 2015 at 7:49 PM
    Subject: Notification of Payment Received
    To: Missing Channel <famusgorg@gmail.com>

 **PayPal**

21 Dec 2015 19:47:48 GMT
Transaction ID: 3U2080672N935705T

**Dear Missing Channel,**

**You received a payment of £475.00 GBP from daniel prince (** ███████████
████ **)**

Thanks for using PayPal. You can now send any items. To see all the transaction details, log in to your PayPal account.

It may take a few moments for this transaction to appear in your account.

**This item is eligible for Seller Protection.**

Don't forget to:

- **Send the item to the delivery address below within 7 days.**
  Please note: items delivered in person or to a different address are not covered by Seller Protection.
- **Use a trackable proof of delivery.**

Find out more about Seller Protection

**Reversals:**
Please be aware that your payment can still be reversed, (e.g. if it is subject to a chargeback), even after you have sent the item to your buyer. Complying with PayPal's Seller Protection and following the trading guidelines on our Security page helps to protect you from things like chargebacks.

---

**Buyer**
daniel prince
████████████████████████

**Delivery address – confirmed**
daniel prince
███████████████

United Kingdom

**Instructions to merchant**
The buyer hasn't entered any instructions.

**Dispatch details**
You haven't added any dispatch details.

| | Unit price | Qty | Amount |
|---|---|---|---|

Gmail - Fwd: Notification of Payment Received

Description

| | | | |
|---|---|---|---|
| 1980 NME + Screen on the Green entrance | £475.00 GBP | 1 | £475.00 GBP |

| | |
|---|---|
| Subtotal | £475.00 GBP |
| **Total** | £475.00 GBP |
| **Payment** | £475.00 GBP |

Payment sent to famusgorg@gmail.com

Invoice ID: 4296642100000389

⑦ Questions? Go to the Help Centre at: www.paypal.com/uk/help

Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance, log in to your PayPal account and click **Help** in the top right corner of any PayPal page.

You can choose to receive plain text emails instead of HTML emails. To change your Notifications preferences, log in to your PayPal account at www.paypal.co.uk, go to your Profile and click **My account settings**.

Copyright © 1999-2015 PayPal. All rights reserved.

PayPal (Europe) S.à r.l. et Cie, S.C.A.
Société en Commandite par Actions
Registered Office: 22-24 Boulevard Royal, L-2449, Luxembourg
RCS Luxembourg B 118 349

PayPal Email ID PP341 - 6391f7d71f234

---

**JkL** <famusgorg@gmail.com>             Mon, Dec 21, 2015 at 3:11 PM
To: theinstitute1976@gmail.com
Cc: Kathy D <kathy197778@gmail.com>

2nd *screen pass.*

K
---------- Forwarded message ----------
From: **daniel prince via PayPal** <member@paypal.co.uk>
Date: Mon, Dec 21, 2015 at 6:08 PM
Subject: Notification of Payment Received
To: Missing Channel <famusgorg@gmail.com>

           21 Dec 2015 18:07:41 GMT
Transaction ID: 90H264839F3417227

Dear Missing Channel,

**You received a payment of £525.00 GBP from daniel prince (daniel.prince@phsolicitors.co.uk)**
[Quoted text hidden]

| Description | Unit price | Qty | Amount |
|---|---|---|---|

9/10/2019                          Gmail - Fwd: Notification of Payment Received

| Metal Box+ B part of Keith's entourage @The Screen | £525.00 GBP | 1 | £525.00 GBP |

| | Subtotal | £525.00 GBP |
| | **Total** | £525.00 GBP |

| | **Payment** | £525.00 GBP |

Payment sent to famusgorg@gmail.com

Invoice ID: 4296642100000384

? Questions? Go to the Help Centre at: www.paypal.com/uk/help

Please do not reply to this email. This mailbox is not monitored and you will not receive a response. For assistance, log in to your PayPal account and click **Help** in the top right corner of any PayPal page.

You can choose to receive plain text emails instead of HTML emails. To change your Notifications preferences, log in to your PayPal account at www.paypal.co.uk, go to your Profile and click **My account settings**.

Copyright © 1999-2015 PayPal. All rights reserved.

PayPal (Europe) S.à r.l. et Cie, S.C.A.
Société en Commandite par Actions
Registered Office: 22-24 Boulevard Royal, L-2449, Luxembourg
RCS Luxembourg B 118 349

PayPal Email ID PP341 - 6b75838b872f2

We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.

Ok

THEATRE

By **johnrobb** - December 28, 2015



Facebook   320    Twitter    Pinterest    More   12

**KEITH LEVENE TO PREMIER HIS DIY FILM "LONDON 1976!" AT LONDON'S "SCREEN ON THE GREEN" THEATRE**



The influential British guitarist, composer, artist, educator and Clash/Public Image, Ltd. founder member Keith Levene will premier his DIY film "Keith Levene's London 1976!!" at the historic Screen on the Green theater in Islington on August 29, 2016 as part of his "London 1976 Festival."

This special evening will be a one-off happening celebrating a quintessentially and historically significant time in British history: The first wave of punk, which emerged from the streets of West London and went global.

The date marks the 40th anniversary of the legendary "Midnight Special" when Levene and the Clash, the Sex Pistols and the Buzzcocks performed a midnight concert at the world-renowned Screen during punk's "year zero" on August 29, 1976.

Levene's film is based on his DIY original art/book "I Was a Teen Guitarist for the Clash!" and will feature his original music, artwork, designs and Levene's personal recollections and memories of being a skateboarding, pinball-playing 17-18 year old guitarist on the scene as punk exploded.

For the fiercely independent Levene, there could be no place other than the Screen on the Green to debut his film.

We use cookies to ensure that we give you the best experience on our website. If you continue to use this site we will assume that you are happy with it.

Ok

Levene adds "I urge anyone who wants to celebrate the spirit and ethos of British punk as we mark its 40th anniversary to support the Screen and other independent venues as well as independent artists, designers and writers. For independence, alternative viewpoints, and freedom of expression above all else is punk's greatest legacy."

In addition to the world premier of "Keith Levene's London 1976!," a discussion and live musical performance is planned as is an interactive gallery display featuring Levene's new artwork which will also be available on his website at www.teenageguitarist76.com later this month. "Although music was of course central to anything and everything punk, art and design were also integral" Levene explains. "Consequently, a live interactive art gallery involving the audience members is a must."

For further information, contact kathy197778@gmail.com or teenageguitarist76@gmail.com

### johnrobb

*http://www.facebook.com/themembranes*

Award winning journalist and boss of Louder Than War. In a 30 year music writing career, John was the first to write about bands such as Stone Roses and Nirvana and has several best selling music books to his name. He constantly tours the world with Goldblade and the Membranes playing gigs or doing spoken word and speaking at music conferences.



Keith Levene | LinkedIn

+    [in]  🔒 https  www.linkedin.com/in/teenageguitarist76

oo    iCloud    Facebook    Home    Twitter    Wikipedia    News ▾    Popular ▾    Jeff Ankenb…seconds ago

hoo Search Results Yahoo Search Results                                            (2) Twitter

inked in ®

Let's make it happen. Look at the channel here http://youtu.be/febcGUo4OyY best is yet to come.

Experience

## Head Honcho in conjunction with Kathy DiTondo @ thE iNStituTe

the iNstituTe

January 2016 – Present (5 months) | United Kingdom

The institute creating a movie and unique art work and a cooperative or collective in retaliation and
in an attempt to facilitate fresh options as a viable alternative to the corporate prison everyone in the
arts &entertainment seems to have no option but to subscribe.
This effort is the apex 3 years work & effort of Keith Levene & Kathy DiTondo toward a unique event
at The Screen on the Green.

Subcribe to the youtube channel thE iNstituTe http://youtu.be/febcGUo4OyY

# Exhibit 5

**JKL** <famusgorg@gmail.com>

to me ▾

Jan 25, 2016, 5:00 PM

☆

↱

⋯

Kathy...you don't have copyright on anything except the book.
You have a 51% controlling interest in the products you're sabotaging for reasons unknown to me.

You copyrighted teen clash in both our names but didn't copyright anything else.

If you endeavour to carry on behaving in this manner you're essentially putting a cease and desist on your self.

I think you should reconsider your actions. You've walked away from this business partnership endless times. Now you realise this one's for real it makes no sense to destroy everything you were involved in.

I made played every note on S4AZ and CZ etc and I don't see how you think you can destroy or gag music that already exists.

As you have a 51% "controlling" interest in the promotion of the works it makes no sense to try and restrict the exploitation of any related product.

K

⋯